Virginia J. ROONEY, Appellant,

v.

Thomas D. ROONEY, Appellee.

No. S–6535.

Supreme Court of Alaska.

April 12, 1996.

Virginia J. Rooney, Sitka, pro se.

Mary E. Guss, Ketchikan, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

## OPINION

RABINOWITZ, Justice.

### I. INTRODUCTION

This appeal requires us to review the superior court's award of primary physical custody of Morgan Michael, the biological child of Virginia Rooney, to Thomas Rooney.

### II. FACTS AND PROCEEDINGS

Virginia J. Rooney (Virginia) married Thomas D. Rooney, Sr. (Tom) in Wrangell, on March 24, 1973. Virginia is Tlingit and Tom is Caucasian. Virginia had one child from a previous relationship, Jeffrey. Tom adopted Jeffrey shortly after the couple was married. The couple also had one child together, Thomas, Jr., who was born in 1973. Because both Jeffrey and Thomas, Jr. have reached the age of majority, their custody is not at issue in this appeal.

Tom and Virginia "had an on again off again relationship." During one period of separation Virginia became pregnant with Morgan Michael who was born on October 4, 1983. Tom is not the biological father of Morgan, nor does it appear from the record that he legally adopted Morgan.

Tom and Virginia divorced in October 1987. The couple was awarded joint legal custody and shared physical custody of Thomas, Jr., and Morgan. However, the parties continued in an intimate relationship, and the physical custody provisions were ignored.

In December 1992 the parties permanently separated. After the separation, both parties remained in Wrangell, and Morgan spent approximately half the week with each parent.

In 1993, Tom remarried. During the same period, Virginia decided to move to Sitka to attend the University of Alaska Southeast. She wanted to bring Morgan with her and discussed the matter with Tom. They were unable to reach an agreement and the beginning of the school year was approaching, so Virginia felt she "was forced to take matters into [her] own hands." In August, she moved with Thomas, Jr. and Morgan to Sit-ka. This decision precipitated a motion by Tom to modify the previous custody decree.

A hearing was held before the superior court in Wrangell on September 1, 1993. The superior court entered an interim custody order shortly thereafter in which it awarded primary physical custody during the school year to Tom. Additionally, the superior court appointed a guardian ad litem (GAL).

In a letter to the superior court dated March 25, 1994, the GAL recommended that Morgan live alternate years with each parent until he reaches high school. At that time he could decide in which community he wished to spend his high school years. The GAL noted that Virginia and Tom "appear equally capable and desirous of meeting Morgan's needs and providing a stable environment that would also allow an open and loving relationship between Morgan and his other parent." The GAL discussed the history of past substance abuse by both parents, stating that they both had overcome their problems and remained sober for several years. She commended both for their personal growth and their work to improve their parenting skills. In recommending the split physical custody arrangement, she noted that Morgan "is a child of mixed ethnic background" and needs to be exposed to both cultures. She also emphasized that Morgan favored this arrangement. Finally, she stated that Morgan was a good student and made friends easily and that she therefore believed he would "be able to move easily from one community to another."

The superior court rejected the GAL's recommendation and instead awarded primary physical custody during the nine-month school year to Tom in Wrangell. Morgan would spend the summer and most other school vacations with Virginia in Sitka. The superior court found that both parents were equally capable and that "with either of his parents Morgan would be safe, protected, and would thrive." The major factor which the superior court relied on in placing Morgan with Tom was continuity. The court found that Morgan was thriving in Wrangell and there was therefore no reason to risk moving him. Virginia now appeals.

## III. STANDARD OF REVIEW

■ We have repeatedly emphasized that the superior court enjoys broad discretion in its determination of custody questions.[1] We will only overturn such a determination when it can be shown that the trial court abused this discretion or that its factual findings are clearly erroneous.[2] "An abuse of discretion in a modification proceeding is established by a showing that the trial court considered improper factors in making its determination, that it failed to consider statutorily mandated factors, or that too much weight was assigned to some factors."[3]

## IV. DISCUSSION

### A. Did the Superior Court Err in Not Granting Virginia a Custody Preference?

At the time Tom and Virginia were divorced in October 1987, the superior court entered the following relevant finding of fact:

Tom argues that by failing to raise the issue of the biological preference at the time of their 1987 divorce proceedings, Virginia is precluded from doing so now. He contends that the parties treated Morgan as a child of their marriage from the time of his birth, through divorce proceedings in 1987, and up until Tom filed his motion to modify the custody provisions of the 1987 decree. Tom contends, based on the statutory language in AS 25.30.110,[6] that because the issue was resolved in the 1987 proceeding, it is binding on Virginia.[7]

■ There is merit in Tom's position.

A custody decree rendered by the superior court of this state having jurisdiction under AS 25.30.020 binds all parties who have been served in this state or notified in accordance with AS 25.30.040 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made until that determination is modified in accordance with law, including the provisions of this chapter.

The parties have three minor children: Jeffrey Allen Rooney, born October 4, 1970, age 16; Thomas Duane Rooney, Jr., born August 1, 1973, age 14; and, Morgan Michael Rooney, born October 4, 1983, age 3.[4]

In its 1987 decree of divorce, the superior court ordered, in part:

Plaintiff and defendant shall have joint custody of the parties three minor children, Morgan Michael Rooney, Thomas Duane Rooney and Jeffrey Allen Rooney

with physical custody as set out in the Findings of Fact and Conclusions of Law.

In deciding Tom's motion to modify the custody provisions of the 1987 decree, the superior court stated at the outset of its Findings of Fact and Conclusions of Law:

Tom Rooney is not the biological parent of Morgan Rooney, but he is clearly Morgan's legal and psychological parent and the parent/child relationship and status was [sic] determined at the time of the original divorce.

Given this finding, the superior court determined that "[t]he appropriate standard to be applied in this case is the best interests of the child." Virginia argues that this was error because this court has expressed a preference for the biological parent in custody disputes between a biological parent and a nonbiological parent.[5]

1. E.g., DeHart v. Layman, 536 P.2d 789, 792 (Alaska 1975).

2. Starkweather v. Curritt, 636 P.2d 1181, 1182 (Alaska 1981) (per curiam).

3. Id. at 1182–83.

4. The superior court additionally found:

The parties have entered into a child custody arrangement, which has been filed with this court.... The agreement provides, inter alia, as follows:

a. Thomas and Virginia shall have joint custody of Morgan Michael Rooney and Thomas Duane Rooney, Jr. ...

5. See Buness v. Gillen, 781 P.2d 985 (Alaska 1989).

6. AS 25.30.110 states:

7. Tom also argues that Virginia did not sufficiently raise the biological parent preference issue in the present proceeding. This argument is without merit. Although, the issue was not raised in Virginia's pre-trial memorandum, the issue was raised during the testimony of both Tom and Virginia, during closing arguments, and in Virginia's Motion for Reconsideration.

Collateral estoppel or issue preclusion bars the relitigation of an issue where: (1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment. *Johnson v. Alaska State Dept. of Fish & Game,* 836 P.2d 896, 906 (Alaska 1991).

*Jackinsky v. Jackinsky,* 894 P.2d 650, 654 (Alaska 1995). The law of the case doctrine also bars litigation of the issue of Morgan's parenthood subsequent to the 1987 decree. *Austin v. Fulton Ins. Co.,* 498 P.2d 702, 704 (Alaska 1972).

■ The superior court, in denying Virginia's motion for reconsideration of its custody decision, rejected Virginia's argument that she was entitled to a preference as the biological parent of Morgan and stated in part:

> In this case, Morgan was conceived and born during the parties' marriage. He has been accepted as the parties' child since his birth. The parties' initial divorce treated Morgan as a child of the marriage.

Given the above, and the principles of collateral estoppel and law of the case doctrine, we conclude the provisions of the 1987 decree of divorce are controlling. As noted, the decree treated Morgan Michael Rooney as a child of Tom and Virginia, and Virginia made no claim to a preference right at that time. Thus, Virginia is now precluded from asserting that, as the biological parent, she is entitled to a preference over Tom, a nonbiological parent, with respect to the custody of Morgan.[8] We therefore conclude that the

superior court did not err in ruling that the appropriate standard to be applied in regard to Tom's motion to modify custody is that of the best interests of the child.

### B. Did the Superior Court Properly Consider the Relevant Statutory Factors?

■ Virginia argues that the superior court misconstrued certain statutory factors, and ascribed too much weight to the continuity factor and not enough weight to other statutory factors. Before addressing the superior court's factual findings regarding the specific statutory criteria, we note that as a general matter, the court did not give too much weight to the "continuity" factor. It appears from the superior court's findings that the superior court was not relying on the continuity factor to the exclusion of the other statutory factors. Instead, it found that Morgan's interests would be equally served by placement with either of the parents and therefore that the single factor which weighed heavily for Tom rather than Virginia should dictate the outcome.[9] Such reasoning is permissible.[10] We now address the superior court's application of the specific statutory criteria.

#### 1. Continuity

Alaska Statute 25.24.150(c)(5) requires that in making custody determinations the court must consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." With respect to the continuity factor, the superior court stated:

> The length of time Morgan has lived in a stable, satisfactory environment, and the desirability of maintaining continuity is the most important statutory factor from the

---

8. In *Turner v. Pannick,* 540 P.2d 1051, 1055 (Alaska 1975), this court discussed the substantive standard to be applied in custody cases between a parent and a non-parent. There we said:

> [P]arental custody ... [is] preferable and only to be refused where clearly detrimental to the child.... Unless the superior court determines that a parent is unfit, has abandoned the child, or that the welfare of the child requires that a non-parent receive custody, the parent must be awarded custody.

9. Although Virginia is correct in noting that some of the other factors did weigh in her favor, the superior court discounted the difference that these factors would make. It seems clear that although the cultural needs factor and the problems of merging with Morgan's new step-family may have tipped the balance in favor of Virginia, continuity weighed much more heavily in favor of primary placement with Tom.

10. *See Evans v. Evans,* 869 P.2d 478, 482 (Alaska 1994).

court's perspective. This factor weighs heavily in favor of primary physical custody being with Tom Rooney. There is no need to risk moving Morgan from Wrangell, where he is thriving, when the court does not have to.

Virginia argues that the superior court's finding with regard to continuity was clearly erroneous because the court considered only "continuity of place," while disregarding "continuity of family." She contends that the stability which Morgan experienced in Wrangell was due to her "presence and protection." She notes that throughout the time which they were together, Tom's job kept him away from home for long periods of time. "Thomas Sr. testified that it wasn't until December of 1992 that he came home to take care of Morgan according to the terms of the custody agreement. From 1987 until this time, Virginia was the primary custodian to the minor children, with the assistance of Thomas Sr.'s mother." Virginia also points out that the superior court noted that Morgan was having problems merging with his step-mother and her children in Wrangell, and contrasts that to the consistent care which Morgan has received from her.

■ The superior court does seem to have treated the concept of continuity somewhat narrowly.[11] Continuity and stability for a child come not only from staying in the same house, or going to the same school. Consideration should also be given to social and emotional factors such as who the primary care-giver was for the child and whether the child would be separated from siblings or family members if he was placed with one parent rather than another.

■ On the basis of our study of the record, however, we cannot say that the superior court abused its discretion. First, according to Virginia, Tom's mother assisted her in raising Morgan. Thus, the presence of both Tom's mother and Morgan's brother in Wrangell suggests that at least two important people in Morgan's past support network will remain with him in Wrangell. Additionally, Morgan is not being thrust into a new custody situation by being placed with

Tom. From some time in 1992 to September 1993, when the motion to modify was filed, Morgan lived four days a week with Tom. Third, the superior court addressed many of the psychological aspects of Morgan's relationship with his father in its other findings. For example, the court found that "[t]he love and affection existing between Morgan and his parents ... [is] equal as to Tom and Virginia." Finally, the superior court addressed the problem of Morgan's "merging" with his new step-mother by stating that the family was taking active steps to deal with this issue. Thus, despite the fact that the separation from his mother for long periods of time will have a destabilizing effect, it is not clearly erroneous to find that continuity, in its broader sense, is served by keeping Morgan in Wrangell. Thus, we find no error in this aspect of the superior court's custody decision.

### 2. Morgan's preference

The superior court is required to consider "the child's preference if the child is of sufficient age and capacity to form a preference." AS 25.24.150(c)(3). In the present case, the superior court disregarded Morgan's stated preference that he alternate years between his parents. The superior court reasoned that "Morgan has made it clear that he does not want to have to make a choice and any expressed wish for equal time with his parents most likely arises out of his desire to be extremely fair to both of them."

Virginia argues that Morgan did make a choice: he chose not to choose between his parents, but instead to live with both of them. She contends that in light of the GAL's findings that Morgan is an extremely bright and capable ten year old, the record shows he had the capacity to express his preference. Therefore, she concludes that it was error for the superior court to disregard Morgan's expressed preference to alternate years with each parent.

■ The statutory standard is meant to give weight to the child's wishes. Thus, where a child wishes to divide his time between his parents because he desires to, that

11. *Cf. McQuade v. McQuade,* 901 P.2d 421 (Alaska 1995).

preference should be given weight. However, where a stated preference results entirely from the child's desire to satisfy his parent's wishes—or because he does not wish to offend either of them—such a preference does not fall within the statutory ambit.

■ The superior court's finding on this issue amounts to a conclusion that Morgan's stated preference was unreliable in light of his desire not to hurt either of his parents. We conclude that this finding was not clearly erroneous. The GAL testified that Morgan sees things in equals. She also told the superior court judge that he should not discuss the issue with Morgan because he might simply tell the judge what he thought the judge wanted to hear. This suggests that throughout the proceeding Morgan had sought to satisfy others rather than his own desires. Based on this evidence it was reasonable for the superior court to conclude that Morgan was unable to articulate a preference and chose the alternating years schedule because he perceived it as the only way to satisfy both his parents.

We therefore conclude that the superior court did not abuse its discretion by ordering a custody arrangement contrary to Morgan's stated preference.

### 3. Cultural needs

With regard to Morgan's cultural needs, the superior court found as follows:

> The evidence indicated that Tom Rooney in the past has ignored certain cultural/heritage needs of Morgan. This is relevant to the statutory factor found in AS 25.24.15(c)(1) and (2).[12] This statutory factor tips the balance in Virginia's favor. However, this was not entirely Tom's doing, as the evidence showed that Virginia Rooney did not pursue this issue with the older two boys, Jeff and Tommy. In the future, Tom needs to be sure to address these needs and not wait until Morgan brings them up, and he needs to take more responsibility in ensuring that Morgan has contact with Virginia's family members in

Wrangell without having to specifically ask each time.

Virginia points to certain evidence adduced at trial to the effect that there is a lack of cultural opportunities in Wrangell due to the absence of native elders and the small native population. She notes that the problem is particularly acute for young native males because of the lack of role models. Finally she contrasts this with the "abundance of programs" available in Sitka, as well as the exposure which Morgan would get to his cultural heritage from living with her on a day-to-day basis.

■ Although it seems clear from the evidence that the opportunities for Morgan to be exposed to his Tlingit heritage are greater in Sitka than in Wrangell, this is not the sole test in custody disputes. Rather, the court must consider the child's cultural needs as one factor in the overall context of his best interests. We think it clear from the above finding that the superior court considered Morgan's cultural needs, and it is implicit that the court believed these needs could be met through its custody order. Morgan will be with his mother for three months each year as well as during various school vacations. She undoubtedly will also see him upon her visits to Wrangell. Additionally, the superior court mandated that Tom take measures with Morgan to assure adequate contact with Virginia's family members in Wrangell and otherwise address his cultural needs. Finally, noting that "Morgan is a child of mixed ethnic background," the GAL stated her belief that it is "imperative that Morgan learn all that he can about both cultures." Thus, we conclude that the superior court adequately considered Morgan's cultural needs and therefore did not abuse its discretion.

### C. Did the Superior Court Err by Disregarding the GAL's Custody Recommendation?

Virginia's final point is that the superior court erred by disregarding the GAL's custo-

---

12. AS 25.24.150(c) provides that
the court shall consider
  (1) the physical, emotional, mental, religious, and social needs of the child;

  (2) the capability and desire of each parent to meet these needs . . .

dy recommendation. The superior court gave four reasons for rejecting the alternating years proposal: (1) both parents do not favor the arrangement; (2) Morgan has thrived in his current living situation; (3) Morgan is approaching his teen-age years, with their accompanying out-of-family activities; and (4) the nine-month/three-month arrangement still provides significant contact with each parent. Virginia argues with respect to the first reason, that even though she preferred primary custody, given a choice between the current arrangement and alternating years she would choose the latter.

The superior court is not required to follow the GAL's recommendation. So long as the superior court's reasons for rejecting the custody investigation are not clearly erroneous, the superior court does not abuse its discretion.[13] In the present case, reasons (2)–(4) above are supported by the record,[14] and standing alone are sufficient to reject the alternating years arrangement. Thus, any error with respect to reason (1) is harmless. Therefore we conclude that the superior court did not abuse its discretion.

## V. CONCLUSION

The superior court's modification of the 1987 decree as it relates to the custody of Morgan is AFFIRMED.

---

**13.** *See Nichols v. Mandelin,* 790 P.2d 1367, 1373 (Alaska 1990).

**14.** Virginia does not dispute the other three reasons given by the trial court.