*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KIMBERLY Y. HARRIS, | ) | |
| | ) | Supreme Court No. S-14808 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-06-11476 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JOHN G. GOVERNALE, | ) | |
| | ) | No. 6839 - November 1, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Robin A. Taylor, Law Office of Robin Taylor, Anchorage, for Appellant. John G. Governale, pro se, Anchorage, Appellee.

Before: Fabe, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Stowers, Justice, not participating.]

MAASSEN, Justice.

I.     INTRODUCTION

Kimberly Mendez (formerly Kimberly Harris), planning a move from Alaska to Florida with her husband, sought an order granting her primary physical custody of her daughter. The superior court awarded primary physical custody instead to the girl's father, John Governale, who remains in Alaska. Kimberly appeals, contending that the superior court erred by overlooking or minimizing John's issues with domestic violence and substance abuse, his inability to meet their child's emotional

needs and foster her relationship with Kimberly, and the relative instability in his domestic life. Kimberly argues in the alternative that even if the superior court was correct to award primary physical custody to John, it erred in its allocation of visitation time and expenses. We affirm on most issues. We remand for reconsideration of the best interests analysis in light of one incident of domestic violence that the superior court erred in analyzing, and for reconsideration of the allocation of visitation expenses.

## II.    FACTS AND PROCEEDINGS

John and Kimberly shared physical custody of their daughter from her birth in 2004 until July 2007, when they entered into an agreement by which John had primary physical custody and Kimberly had certain visitation rights. In 2008 Kimberly married Joshua Mendez, a staff sergeant in the United States Air Force. In June 2008 she filed a petition for a domestic violence protective order against John and a motion seeking full custody of their daughter. A long-term domestic violence protective order was issued. John and Kimberly settled their custody dispute in May 2009, agreeing to share physical custody and that Kimberly would dismiss the domestic violence protective order.

In November 2011, John and his girlfriend Anecia had an altercation in their home which resulted in John's arrest on a charge of assault in the fourth degree. The charge was ultimately dismissed, but the couple immediately separated, and John, with his daughter, moved into one unit of a duplex owned by his parents. In 2012 the Air Force transferred Kimberly's husband Joshua to Florida. Kimberly again filed a motion for primary physical custody, asserting that it was in the child's best interests to move to Florida with her.

Instead, the superior court awarded primary physical custody to John following trial. The superior court found this to be in the child's best interests because

John was better able to provide her with long-term stability. The superior court based its ruling primarily on the facts that John had had primary physical custody of the child in the past and that she had formed a strong bond with John's parents, her paternal grandparents. The superior court found that the evidence was neutral as to the other best interests factors, including the existence of domestic violence or substance abuse in either household.

Kimberly appeals, arguing that the superior court gave too much weight to John's period of sole physical custody while failing to take into account the instability in his domestic situation and the bond that their daughter had formed with Kimberly's husband Joshua. Kimberly also argues that John had problems with domestic violence and alcohol abuse that the court failed to weigh, and that the superior court erred in finding that John was able and willing to encourage the mother-daughter relationship. Finally, Kimberly argues that the superior court erred in disregarding testimony from a teacher regarding the child's fear of discipline in John's home.

Kimberly argues in the alternative that if John is entitled to primary physical custody, the superior court erred in its allocation of visitation time and its allocation of the costs of visitation.

## III. STANDARD OF REVIEW

"The superior court has broad discretion in deciding child custody issues."[1] We will not reverse a custody decision unless the "court has abused its discretion or the

---

[1] *Iverson v. Griffith*, 180 P.3d 943, 945 (Alaska 2008) (citing *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

controlling factual findings are clearly erroneous."[2] "The superior court abuses its discretion if it considers improper factors in determining custody, fails to consider statutorily mandated factors, or assigns disproportionate weight to some factors while ignoring others."[3] A factual finding is clearly erroneous if, after reviewing the record, we are left with the definite impression that a mistake has been made.[4] We review for abuse of discretion the superior court's determination that a particular issue was not fully and fairly litigated in a prior proceeding for purposes of the application of collateral estoppel.[5] We also review for abuse of discretion the superior court's orders on visitation.[6]

## IV. DISCUSSION

### A. The Superior Court Did Not Clearly Err In Finding That The Stability And Continuity Factor Favored John.

Alaska Statute 25.24.150(c) requires that the superior court base its decision to modify a custody order on the best interests of the child. Alaska Statute 25.24.150(c) lists the factors the court should consider in its best interests determination. One of them is "the length of time the child has lived in a stable, satisfactory environment and the

---

[2]     *Id.* (citing *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002)).

[3]     *Id.* (citing *Fardig*, 56 P.3d at 11).

[4]     *Osterkamp v. Stiles*, 235 P.3d 178, 183 (Alaska 2010) (citing *In re Adoption of Missy M.*, 133 P.3d 645, 648 (Alaska 2006)).

[5]     *Misyura v. Misyura*, 242 P.3d 1037, 1040 (Alaska 2010) (quoting *Borg-Warner Corp. v. Avco Corp. (Lycoming Div.)*, 850 P.2d 628, 635 (Alaska 1993)).

[6]     *Faro v. Faro*, 579 P.2d 1377, 1379 (Alaska 1978) (citing *Curgus v. Curgus*, 514 P.2d 647, 649 (Alaska 1973)).

desirability of maintaining continuity."[7] We have described this factor as including "both emotional stability and geographic stability,"[8] and within this rubric the superior court may consider a number of subsidiary factors, "including, but not limited to, the relationship with the custodial parent, the home provided by the custodial parent, the children's school, the community of friends and family, the cultural community, and the children's relationship with the non-custodial parent."[9]

The superior court in this case determined that the stability and continuity factor favored Kimberly "[i]n the short term" because John's living arrangements had been temporarily disrupted when he separated from Anecia, whereas Kimberly's move to Florida, while a geographical change, would continue the stable home environment that Kimberly and her husband were already providing. The court found that in the long term, however, the stability and continuity factor favored John. In reaching this conclusion the court placed some weight on the parties' agreement in 2007-08 that it was then in the child's best interests that she be in John's sole physical custody, and the court further observed that John had been "a more consistent provider" for the girl over the years and "a very stable source of physical and emotional support" for her. The court found that another "stabilizing factor" for the child was the close bond she had developed

---

[7] AS 25.24.150(c)(5).

[8] *Blanton v. Yourkowski*, 180 P.3d 948, 954 (Alaska 2008) (citing *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001)).

[9] *Barrett v. Alguire*, 35 P.3d 1, 9 (Alaska 2001); *see also Rooney v. Rooney*, 914 P.2d 212, 217 (Alaska 1996) (observing that continuity and stability "come not only from staying in the same house, or going to the same school. Consideration should also be given to social and emotional factors such as who the primary care-giver was for the child and whether the child would be separated from siblings or family members if he was placed with one parent rather than the other.").

with her paternal grandparents in Alaska, a relationship the court believed it was important to continue.

Kimberly argues that her home life is "obviously more stable" than John's and that the superior court failed to give sufficient weight to John's "volatile and inconsistent relationship with his live-in girlfriend," on the one hand, and to her daughter's good relationship with her stepfather Joshua on the other. In *Rooney v. Rooney*, we considered the appeal of a mother who was moving from Wrangell to Sitka and sought to take her son along with her.[10] We affirmed the superior court's award of primary physical custody to the father, "despite the fact that the separation from [the] mother for long periods of time [would] have a destabilizing effect," because the presence of supportive family members in Wrangell, the child's close relationship with his father, and the father's active efforts to "merge" the child with the stepmother's family all supported the conclusion "that continuity, in its broader sense, is served by keeping [the child] in [the father's community]."[11] In this case, it appears that the superior court gave careful and considered weight to the facts relevant to the stability and continuity factor, including the disruptions in John's domestic life, which the court found were likely to be temporary. It is true that the court did not separately evaluate the importance of individual members of the child's "community of friends and family" other than John's parents,[12] but it was not unreasonable for the court to highlight the

---

[10]     914 P.2d 212, 214 (Alaska 1996).

[11]     *Id.*

[12]     In addition to the good relationship the child enjoyed with Joshua, Kimberly's husband, she had what was described as a close sibling relationship with the

(continued...)

importance of the paternal grandparents given the evidence that they had a major role in caring for the child since her birth. We cannot say that the court clearly erred when it concluded that the interests of long-term stability and continuity favored the award of primary physical custody to John.[13]

**B. The Superior Court Did Not Err In Rejecting A Presumption Against Custody Based On A History Of Domestic Violence, But It Did Err In Its Best Interests Analysis When Analyzing One Incident In John's Household.**

Alaska Statute 25.24.150(g) creates a rebuttable presumption against awarding custody to a parent with "a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner." A "history of perpetrating domestic violence" exists if the parent has "caused serious physical injury" during a domestic violence incident or "has engaged in more than one incident of domestic violence."[14] Separately, AS 25.24.150(c)(7) requires that the superior court consider "any evidence of domestic violence . . . in the proposed custodial household" in making its custody determination. Kimberly argues that John committed repeated acts of domestic violence against her and another act against his girlfriend Anecia, and that these acts constitute a history sufficient to trigger the presumption against custody in AS 25.24.150(g). Alternatively, Kimberly argues that these acts should have weighed

---

[12]      (...continued)
children of John's girlfriend Anecia.

[13]      Kimberly also argues that John's tumultuous home life caused their daughter to have behavioral problems at school. But the child's teacher testified that she was unsuccessful in identifying the likely cause of the child's behavior, which, in any event, was improving by the time of trial.

[14]      AS 25.24.150(h).

heavily against John in the superior court's best interests analysis under AS 25.24.150(c)(7).

### 1. Alleged domestic violence against Kimberly

Kimberly first argues that the superior court erred when it declined to find that John had committed acts of domestic violence against her. She contends that John should have been collaterally estopped from arguing otherwise because of the domestic violence protective order that was granted against him in 2008. Collateral estoppel "renders an issue of fact or law which has already been decided by a court of competent jurisdiction conclusive in a subsequent action between the same parties."[15] But "the decision to apply collateral estoppel is within the discretion of the trial court,"[16] and the superior court in this case had discretionary grounds for refusing to give the protective order collateral estoppel effect. Kimberly sought the 2008 protective order at the same time that she filed her first motion to modify the couple's custody arrangement. The order was dismissed six months after it was issued as part of the parties' new agreement on custody. The superior court determined that because of the relatively quick dismissal of the order and its role in the custody negotiations, John had little incentive to litigate it fully.[17] The court was also troubled by the order's cursory findings, which stated only

---

[15] *Smith v. Stafford*, 189 P.3d 1065, 1075 (Alaska 2008) (quoting *McElroy v. Kennedy*, 74 P.3d 903, 907 (Alaska 2003)).

[16] *Misyura v. Misyura*, 242 P.3d 1037, 1040 (Alaska 2010) (quoting *Borg-Warner Corp. v. Avco Corp. (Lycoming Div.)*, 850 P.2d 628, 635 (Alaska 1993)) (internal quotation marks omitted).

[17] *See McAlpine v. Pacarro*, 262 P.3d 622, 627 (Alaska 2011) (holding that "it may be unfair to apply collateral estoppel if the stakes in the first proceeding did not warrant a full and vigorous contest of the issue" (citing *Sengupta v. Univ. of Alaska*,

(continued...)

that John had "committed a crime involving domestic violence" without specifying which of the petition's allegations had been borne out by the evidence. It was within the court's discretion to decline to give the protective order collateral estoppel effect, and we do not find that the discretion was abused.

Kimberly appears to argue that even without the benefit of collateral estoppel, the evidence that John committed more than one act of domestic violence was sufficient to outweigh his denials. But the superior court declined to credit Kimberly's testimony alleging domestic violence between them, and we do not reweigh the evidence or reassess the trial court's determinations of witness credibility.[18] Absent a finding that John committed domestic violence against Kimberly, there was no *history* of domestic violence which would require application of the presumption against custody in AS 25.24.150(g), and we affirm the superior court's ruling on this issue.

## 2. The November 2011 incident involving Anecia

Because Kimberly failed to establish that John had a history of perpetrating domestic violence, the presumption against custody in AS 25.24.150(g), which depends on such a history, was not triggered. But Kimberly also argues that the physical altercation between John and Anecia in November 2011 was an incident of domestic violence for purposes of AS 25.24.150(c)(7) that had to be weighed in the best interests analysis, and that the superior court erred in giving it no weight. We conclude that this argument has merit.

---

[17]    (...continued)
21 P.3d 1240, 1250, n.29 (Alaska 2001))).

[18]    *Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 67, 71 (Alaska 2008) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

Although John and Anecia were not living together at the time of trial, the court could easily have concluded that they would do so again; we assume this to be the court's premise. John and Anecia had lived together for four years, had a child together, and continued to share major expenses while living apart. Their children were close. Moreover, regardless of whether John and Anecia still lived together, the governing statutes make domestic violence relevant even if it involves persons "who *have* lived together."[19]

There was no dispute that there was a physical altercation involving John and Anecia. The court found "[I]t's clear that there was a disturbance, that there was an argument, that . . . it did become physical." The police were called, and John was charged with assault in the fourth degree (a charge that was still pending at the time of trial but was later dismissed). After discussing the incident in some detail in its oral findings, the superior court concluded, "I'm not sure how much weight that I can put on that particular instance in this matter," reasoning that there had been no showing that a crime had been committed and that the child had not been present. The court reiterated in its later written findings that Anecia's testimony "did not establish by a preponderance that Anecia was the victim of any assault" and that the child had not been in the home at the time. The court did not mention AS 25.24.150(c)(7) or give any weight to the incident in its best interests analysis.

---

[19] AS 18.66.990(5)(B) (emphasis added). AS 26.90.010 provides that the definition of "domestic violence" in Title 25 is that given in AS 18.66.990. "Domestic violence" means violence "by a household member against another household member." AS 18.66.990(3). "Household member" includes not just people who live together but also people "who have lived together." AS 18.66.990(5)(B).

However, each of the reasons the superior court gave for its inability to weigh the incident in the best interests analysis was legally erroneous. First, the superior court took note of the evidence that John was simply warding off physical contact initiated by Anecia and that self-defense on his part had not been disproved.[20] In its written findings, the superior court ruled that because Anecia did not establish that she was "the victim of any assault . . . the presumption in AS 25.24.150(g) [had] not been proven." But while it is true that the presumption provision in subsection (g) looks only to instances of domestic violence in which the parent seeking custody is the perpetrator, the best interests factor of subsection (c)(7) requires a trial court to consider "any evidence of domestic violence . . . in the proposed custodial household." It does not matter whether the parent seeking custody was the aggressor or the victim.[21] The incident with Anecia was relevant to the best interests analysis regardless of whether John was acting in self-defense.

Second, the superior court downplayed the incident because it found a lack of evidence that an assault occurred, relying on Anecia's testimony to find that she was never in "fear of injury or pain." But if the court believed that Anecia was the aggressor, then the relevant question would be whether John, not Anecia, feared imminent physical

---

[20]    Kimberly contests this finding. But although there was evidence to the contrary, both Anecia and John testified that John had not been violent that night; John testified that Anecia was the aggressor and he was merely trying to defend himself. The superior court did not clearly err in crediting John's testimony.

[21]    *See Heather W. v. Rudy R.*, 274 P.3d 478, 483-84 (Alaska 2012); *Iverson v. Griffith*, Mem. Op. & J. No. 1260, 2006 WL 2578692, at *4 (Alaska, Sept. 6, 2006). In *Heather W.*, the superior court considered the incident of domestic violence under the rubric of the stability factor, AS 25.24.150(c)(5), and we affirmed it in that context. 274 P.3d at 484-85.

injury.[22] John's testimony could support such a finding. Furthermore, no matter which person was the aggressor, an attempted assault occurred if the perpetrator *attempted* to put the victim in fear of imminent physical injury, regardless of success, and attempted assault is a domestic violence crime.[23] And finally, because both John and Anecia suffered some minor injury during the altercation, the evidence could support a finding that an assault occurred regardless of whether either of them feared injury at the time.[24]

Third, the superior court disregarded the incident because the child was not present when it occurred. But domestic violence in the proposed custodial household must be weighed in the best interests analysis regardless of whether the child was present.[25] The statutory requirement, again, is that the superior court weigh "*any evidence* of domestic violence . . . in the proposed custodial household."[26] There is no requirement that the child witness the violence. We previously observed that "the language of AS 25.24.150(c) suggests that the legislature believes that domestic violence

---

[22]    *See* AS 11.41.230.

[23]    *Parks v. Parks*, 214 P.3d 295, 300 (Alaska 2009) (citing AS 25.90.010 and AS 11.41.230(a)(3)).

[24]    *See* AS 11.41.230(a)(1).

[25]    *See Heather W.*, 274 P.3d at 482; *Iverson*, 2006 WL 2578692, at *4. We have also upheld the trial court's weighing of domestic violence incidents that occurred outside the child's presence in child in need of aid cases. *See, e.g.*, *Barbara P. v. State, Dep't of Health & Soc. Servs.*, 234 P.3d 1245, 1257-58 (Alaska 2010); *Winston J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 134 P.3d 343, 348 (Alaska 2006).

[26]    AS 25.24.150(c)(7) (emphasis added).

in a proposed custodian's home always directly affects the well-being of the child"[27] and a "child need not see domestic violence in order to be exposed to it."[28]

The superior court's reluctance to weigh this incident of domestic violence in its best interests analysis thus appears to have been based on several legal errors in its analysis. We remand for the court's reconsideration of custody in light of this discussion.

### C. The Superior Court Did Not Clearly Err In Finding That Substance Abuse Did Not Affect The Child's Well-Being.

Alaska Statute 25.24.150(c)(8) requires the superior court to factor into its best interests analysis "evidence that substance abuse by either parent . . . directly affects the emotional or physical well-being of the child." Kimberly argues that the superior court erred in finding that John did not have a substance abuse problem that affected their daughter's well-being. The evidence on the subject was mixed. Although John had been convicted once of driving under the influence, he had fulfilled the requirements of his treatment program and testified that he had changed his life to avoid similar problems in the future. There was conflicting testimony as to whether the later incident involving Anecia in November 2011 was attributable in part to John's drinking. The superior court noted that there were allegations about Kimberly's substance abuse too, but it concluded that there was no evidence that drinking by either parent "directly affected their ability to parent or the emotional or physical well-being of the child." It was up to the superior

---

[27] *Iverson*, 2006 WL 2578692, at *4.

[28] *Heather W.*, 274 P.3d at 482 n.15 (quoting *Iverson*, 2006 WL 2578692, at *4 n.11).

court to resolve the evidentiary disputes,[29] and we see no clear error in its decision of this issue.

**D.    The Superior Court Did Not Clearly Err In Finding That John Was Able To Meet The Child's Emotional Needs.**

Kimberly argues that the superior court clearly erred in finding that John was able to meet their daughter's emotional needs,[30] relying on testimony by a teacher that the child was afraid of getting in trouble from John because of her disruptive behavior at school.  This argument is without merit.  John testified that in order to deal with his daughter's misbehavior at school, he would "take privileges away" and make her "contemplate . . . whether or not it's even worth it to do that":  "She[] get[s] grounded for the most part.  She loses play time."  There was no evidence that John mischaracterized his disciplinary methods.  Nor was there any evidence that this discipline adversely affected his ability to care for the child's emotional needs or that it should otherwise weigh against him in the best interests analysis.  We see no clear error in the court's determination that the parents are equally able to meet their daughter's needs.

**E.    The Superior Court Did Not Clearly Err In Finding That John Was Able To Encourage The Child's Relationship With Kimberly.**

Alaska Statute 25.24.150(c)(6) requires the court to consider "the willingness and ability of each parent to facilitate and encourage a close and continuing

---

[29]    *See Pam R. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 185 P.3d 67, 71 (Alaska 2008) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

[30]    *See* AS 25.24.150(c)(1)-(2) (requiring consideration of "the physical, emotional, mental, religious, and social needs of the child" and "the capability and desire of each parent to meet these needs").

relationship between the other parent and the child." Kimberly argues that the superior court erred in finding that John was willing and able to encourage the mother-daughter relationship. She cites to her own testimony that John had at times withheld important information about their daughter and had refused to let Kimberly see her for a three-week period during the year that he had primary physical custody. In analyzing this factor, the superior court acknowledged that each parent had said "horrible things about the other parent here in court"; however, it discounted this information in favor of the parents' history, which it found to be exemplified by exchanges of emails addressing their daughter's problems at school and showing that the parents included each other in decision-making and worked together in their daughter's best interests. It was not clear error for the superior court to find this collaborative history more probative of the parents' future relationship than the accusations they made against each other in the context of litigation.

**F.    The Superior Court Did Not Abuse Its Discretion In Scheduling Visitation.**

The superior court granted Kimberly visitation during alternating Christmases and Thanksgivings, each spring break, and each summer vacation with the exception of ten days at the beginning and end of the summer. Kimberly argues that the superior court abused its discretion in three ways in fashioning this schedule. She argues first that the superior court erred by alternating Christmases instead of dividing each one between the parents. But by alternating holidays rather than dividing them up, the superior court sought to minimize the time and inconvenience of holiday travel while ensuring that Kimberly and her daughter had an extended holiday period together, either Christmas or Thanksgiving, each school year in addition to spring break. This was a rational allocation of time and not an abuse of discretion.

Kimberly argues that the superior court also erred by allowing John to retain custody during the first ten days and the last ten days of the summer. The superior court explained that it was important to allow John to enjoy part of the summer with his daughter without the pressures of school. Kimberly argues that this rationale improperly focused on John's needs, not the child's, but it is consistent with the child's best interests to have some recreational time with her father during the summer months. Indeed, Kimberly suggested an identical allocation in the event she were awarded primary physical custody. This aspect of the award was not an abuse of discretion either.

Third, Kimberly argues that the superior court erred in awarding her only five days of visitation if she comes to Alaska to visit, contending that this is a very brief allocation "for a parent who has traveled almost 5,000 miles from Florida to Alaska." But this provision becomes relevant only if Kimberly visits Alaska while the child is in school, as the holiday and vacation periods are otherwise allocated to one parent or the other. If Kimberly relocates to Anchorage permanently, the order makes clear that physical custody will again be shared. While extended visits by Kimberly short of permanent relocation could necessitate a modification to the schedule, we cannot say that providing five days of visitation for any visits to Alaska that are not otherwise addressed in the order was an abuse of discretion, given the broad discretion the superior court has in this area.[31]

## G. It Was Error To Allocate Visitation Expenses Before Making An Award Of Child Support.

Finally, Kimberly argues that the superior court erred in requiring that she pay 75% of the estimated travel expenses for the proposed visitation. We agree that the court erred procedurally. Alaska Civil Rule 90.3(g) requires that the court allocate

---

[31] *Faro v. Faro*, 579 P.2d 1377, 1379 (Alaska 1978).

visitation expenses "[a]fter determining an award of child support under this rule." Here, the superior court allocated visitation expenses first, and Kimberly correctly observes that this requires a remand.[32] The superior court, in making its allocation of visitation expenses, should take into account any child support order.

## V.    CONCLUSION

We VACATE the custody order and REMAND for reconsideration of custody and for reallocation of travel expenses in accordance with this opinion.

---

[32]    *See Skinner v. Hagberg*, 183 P.3d 486, 491-92 (Alaska 2008).