NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID D., | ) | |
| | ) | Supreme Court No. S-17907 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-16-05779 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MARISSA D., | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1857 – November 17, 2021 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: David D., pro se, Eagle River, Appellant. Marissa D., pro se, San Tan Valley, Arizona, Appellee.

Before: Winfree, Maassen, Carney, and Borghesan, Justices. [Bolger, Chief Justice, not participating.]

## I.    INTRODUCTION

A couple dissolved their marriage in 2016, and by agreement the mother had primary physical custody of their daughter. Four years later the father moved to modify custody, alleging that there was domestic violence and substance abuse in the mother's household. Following an evidentiary hearing, the superior court found that only one incident of domestic violence had been proven and that it was too old to have any significance. The court found both that there was no substantial change in

---

[*]    Entered under Alaska Appellate Rule 214.

circumstances that would justify a modification of custody and, alternatively, that the statutory best interests factors favored maintaining the existing custody arrangement. The court also recalculated the father's child support obligation and briefly addressed an unresolved property issue from the parties' dissolution.

The father appeals. He challenges the superior court's findings on domestic violence, its child support order, and its consideration of the property issue. We conclude that the superior court did not abuse its discretion or err in its rulings, and we therefore affirm them.

## II.    FACTS AND PROCEEDINGS

### A.    Background

David and Marissa D. were married in 2010 and had a daughter in 2013.[1] They dissolved their marriage in 2016. They agreed that they would have joint legal custody, Marissa would have primary physical custody, and David would have weekend visitation.

In 2017 Marissa and the child moved to Arizona to be closer to Marissa's extended family. The child continued to spend summers with David in Alaska, although he claimed that he did not have her as long as he was supposed to in the summers of 2018 and 2019.

### B.    Complaint to Modify Custody And Evidentiary Hearing

In July 2020 David filed a complaint in superior court seeking to modify the parties' original custody agreement, requesting primary custody of their daughter and checking a box on the form complaint stating that he was "concerned about [his] safety

---

[1]    We use initials to protect their privacy.

or the safety of the children when with the other parent."[2] In Marissa's response she noted that the child had been in her primary care since birth, that the child was "well cared for and a happy child," that David had acquiesced to the move out of state, and that he rarely initiated contact.

The superior court held an evidentiary hearing at which four people testified. Under questioning by David's attorney, Marissa described an incident in 2011 in which she claimed David threw her dog out the window of his truck and she "reacted and there [were] physical connections." She admitted that the police took her into custody as a result, but she said they did not charge her. She also admitted to a more recent "heated exchange" over finances with her current boyfriend in which she asked him to leave the house and may have shoved him out the door. She testified that her daughter was not in the house at the time. She confirmed that her boyfriend was charged with disorderly conduct, criminal damage, and possession of drug paraphernalia following that incident, but she also testified that he took anger management classes afterward and that they had "never been aggressive or violent towards each other. Never." She testified that her boyfriend had not used drugs for ten months, that she did not use drugs herself, and that she "absolutely" did not allow drug use in her home.

Marissa also described her work schedule and her daughter's school and after-school programs. She testified that the child participated in speech therapy, cheer dance, and church functions. She testified that she had a "strong bond" with her daughter and encouraged her daughter's relationship with David.

David testified that Marissa had assaulted him on a number of occasions. He described the 2011 incident Marissa had testified about; he testified that although she

---

[2] Although filed as an original complaint, the claim proceeded appropriately as a motion to modify custody in the 2016 dissolution.

had scratched, bit, and kicked him and the "cops were called," he declined to press charges. Asked about other incidents of domestic violence, he testified that Marissa pushed him off a stair landing in 2015 causing him to hit his head, and that at other unspecified times she threw shoes at him, smashed the radio in his pickup truck, and scratched an insult in the truck's side.

David testified that he was concerned about their daughter being exposed to violence and drug use. He testified that Marissa and her boyfriend used to smoke marijuana almost daily when David lived with them in Alaska. He also described chew marks on their daughter's glasses case and said she had told him she chewed on it when Marissa and her boyfriend were fighting.

David's wife, Heather, and his father both testified briefly. Heather confirmed David's testimony about the glasses case. David's father described an incident he had witnessed at the airport when Marissa grabbed the child's face — as if trying to get her attention or admonishing her — more harshly than he would have expected under the circumstances.

### C. The Superior Court's Decision

The superior court made oral findings at the close of the September hearing and issued a written order later that day. The court began by noting the two-step analysis that must precede a modification of custody: first, the party seeking modification must show that there has been a substantial change in circumstances;[3] and second, the court must determine whether the proposed custody change is in the child's best interests.[4]

---

[3] *See Long v. Long*, 816 P.2d 145, 150 (Alaska 1991) ("The parent making the motion for custody modification bears the burden of proving a substantial change of circumstances as a threshold matter.").

[4] *See id.* ("Once the movant meets that burden, he or she is entitled 'to a
(continued...)

The court identified the alleged change in circumstances as David's allegation that Marissa had recently perpetrated "some sort of domestic violence" against her boyfriend. But the court described the incident as a primarily "verbal argument regarding finances" that caused the boyfriend no physical pain and did not meet the definition of "an assault or any other crime that's a crime of domestic violence." The court further stated that even if the incident did constitute domestic violence, it would not find that the "single episode constitutes a substantial change of circumstances in the child's life."

The court went on, however, to consider the best interests factors as an alternative basis for its ruling.[5] It noted that the child was attending speech therapy but otherwise had normal needs typical of a seven-year-old girl; it found that both parents were capable of meeting those needs, although David's work schedule could make parenting more difficult for him.[6] It found that Marissa "ha[d] encouraged a relationship between father and daughter" but that David did not call as often as he could.[7] It found that the child was too young to express a preference but that she appeared to love both

---

[4]     (...continued)
hearing to consider whether, in light of such changed circumstances, it is in the child's best interest to alter the existing custodial arrangement.' " (quoting *Lee v. Cox*, 790 P.2d 1359, 1361 (Alaska 1990))).

[5]     *See Harris v. Governale*, 311 P.3d 1052, 1055 (Alaska 2013) (noting that courts are required to consider factors listed in AS 25.24.150(c) in making best interests determinations).

[6]     *See* AS 25.24.150(c)(1) ("the physical, emotional, mental, religious, and social needs of the child"); AS 25.24.150(c)(2) ("the capability and desire of each parent to meet these needs").

[7]     *See* AS 25.24.150(c)(6) ("the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child").

parents.[8] It found that the stability factor was weighted in favor of Marissa, given that the child had lived with her mother her entire life and had a well-established environment in Arizona.[9] The court found no evidence of substance abuse.[10] As for domestic violence, the court found that the one proven incident, from 2011, should not get much weight in the best interests analysis primarily because of its age.[11]

Weighing all these factors, the court concluded that the existing custody arrangement should remain largely unchanged: Marissa and David would continue to share legal custody, and Marissa would continue to have primary physical custody.

The court then turned to a few other issues. The court observed that David had still not refinanced the marital home as he had promised to do as part of the couple's property settlement in their dissolution. The court urged David to get it done so that the court would not have to step in and force a sale. Next the court advised the parties that it would recalculate monthly child support based on the parties' recent submissions. Although David had testified that he and Marissa had agreed to reduce his child support payments, the court explained that private agreements to pay less than the court-ordered amounts would be unenforceable.

David appeals.

---

[8] *See* AS 25.24.150(c)(4) ("the love and affection existing between the child and each parent").

[9] *See* AS 25.24.150(c)(5) ("the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

[10] *See* AS 25.24.150(c)(8) ("evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child").

[11] *See* AS 25.24.150(c)(7) ("any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents").

## III. STANDARD OF REVIEW

The superior court's broad discretion in custody matters "extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[12] The superior court also has "broad discretion in determining whether a proposed child-custody modification is in the child's best interests. We will set aside the superior court's best interests determination only if the trial court abused its discretion or if the fact findings on which the determination is based are clearly erroneous."[13] Clearly erroneous findings leave us with "a definite and firm conviction that the trial court has made a mistake"; and the trial court abused its discretion if it "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[14] We give " 'particular deference' to the trial court's factual findings when they are based primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[15]

## IV. DISCUSSION

David challenges three aspects of the superior court's decision: (1) its failure to give credence to his allegations of domestic violence and to weigh those allegations more heavily in the best interests analysis; (2) its refusal to recognize what

---

[12]     *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016).

[13]     *Bruce H. v. Jennifer L.*, 407 P.3d 432, 436 (Alaska 2017) (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)).

[14]     *Joy B. v. Everett B.*, 451 P.3d 365, 368 (Alaska 2019) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)).

[15]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005) (quoting *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001)).

David alleged to be Marissa's agreement that he could pay less than the court-ordered child support; and (3) the court's consideration of the home refinance issue in the context of the modification hearing. As explained below, we conclude that the superior court did not err or abuse its discretion when deciding any of these issues.

> **A.** **The Superior Court Did Not Abuse Its Discretion When Determining Whether There Had Been A Substantial Change In Circumstances Or In Weighing Evidence Of Domestic Violence.**

The superior court found that David's domestic violence allegations were not sufficient to prove a substantial change in circumstances — the threshold issue when a court is considering whether to modify an existing custody arrangement.[16] Even though the threshold was not met, the court went on to determine whether there was a history of domestic violence that could disqualify Marissa from having custody,[17] and then whether modifying custody would be in the child's best interests. We assume that David is challenging the court's decision at each step: first, that his allegation of domestic violence did not constitute a significant change in circumstances; second, that there was no disqualifying history of domestic violence; and third, that the domestic violence factor was not entitled to substantial weight in the best interests analysis.[18]

---

[16] *Long v. Long*, 816 P.2d 145, 150 (Alaska 1991) ("The parent making the motion for custody modification bears the burden of proving a substantial change of circumstances as a threshold matter.").

[17] *See* AS 25.24.150(g) (providing a "rebuttable presumption that a parent who has a history of perpetrating domestic violence" may not be awarded sole or joint legal or physical custody).

[18] Because David is self-represented, "we consider [his] pleadings liberally in an effort to determine what legal claims have been raised." *Toliver v. Alaska State Comm'n for Hum. Rts.*, 279 P.3d 619, 622 (Alaska 2012).

The court addressed David's domestic violence allegations at the close of the evidentiary hearing. The court called the recent incident involving Marissa's current boyfriend "a verbal argument regarding finances," a situation the court noted was "tremendously aggravated by" David's failure to fully perform his obligations under the couple's property distribution agreement following the dissolution of their marriage. The court found that Marissa asked her boyfriend to leave, "at most she pushed him out of the house," and that there was no evidence this caused the boyfriend any "physical pain." The court found that this act did not "constitute[] an assault or any other crime that's a crime of domestic violence," and even if it did, it was not a significant enough event in the child's life to constitute a substantial change in circumstances. The court's factual findings on this incident have a basis in the testimony and are not clearly erroneous; it was not an abuse of discretion for it to conclude on the basis of those facts that there was no substantial change in circumstances.[19]

The court turned to David's allegations of earlier incidents. It acknowledged the single admitted incident in 2011 — two years before the couple's daughter was born, five years before the parties' original custody agreement, and nine years before the hearing. However, it found that David had failed to prove any others: that Marissa had pushed him off a stair landing, thrown a shoe at his truck, broken the truck's radio, and scratched an epithet in its side. These allegations all relied solely on David's testimony, and the court did "not find that he has proven by a preponderance of the evidence that those things occurred." The court concluded that because the one

---

[19]     *See Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (stating that "[t]he court's broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare," and underlying factual findings are reviewed for clear error).

admitted incident "was really not very significant" and there were no other instances of domestic violence, Marissa did not have a history of domestic violence that should factor into its custody decision.

When it came to weighing the domestic violence factor in the best interests analysis, the court was entitled to exercise its "considerable discretion in determining [its] importance . . . in the context of [the] specific case."[20] The court declined to weigh the factor heavily against Marissa, finding that the age of the 2011 incident "impact[ed] the weight [the court would] give it," as well as the fact that David "despite this episode apparently came to the conclusion that [Marissa] was stable enough that it would be appropriate to have a child together, and they did."

David contends that the superior court overlooked his evidence showing that Marissa "lives in a violent[,] drug[-]filled house" and that it failed to fully consider "all accounts of violence[,] documented and undocumented." He asserts that the court slighted his testimony only because he could not remember all the specifics of the "times and the events that led to the incidents." Essentially, however, David appears to be asking us to reassess his and Marissa's credibility and reach a different conclusion about what occurred. But it is the superior court's task to judge witness credibility and the weight to give their testimony,[21] and "we will not re-weigh evidence when the record provides clear support for the [superior] court's ruling."[22] The court's domestic violence findings are supported by the record and not clearly erroneous; and given the age of the

---

[20] *Kristina B. v. Edward B.*, 329 P.3d 202, 209 (Alaska 2014) (quoting *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010)).

[21] *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

[22] *Tessa M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 182 P.3d 1110, 1114 (Alaska 2008).

single incident it found to be proven, we cannot say that the court abused its discretion by giving the domestic violence factor little weight in its best interests analysis.

**B.    The Court Did Not Err By Failing To Follow An Alleged Private Agreement That David Would Pay Less Than The Court-Ordered Child Support.**

Following the evidentiary hearing the court also recalculated David's child support obligation based on the parties' updated financial information. David had testified that Marissa agreed he would pay less than the court-ordered amount because "before [she] left for Arizona" he had paid for her car, her car insurance, and day care; Marissa responded that she did "not recall [him] paying on that." Whether or not there was such an agreement, the court explained that "[u]nder Alaska law parties may not make private child support agreements," which "means [they] can't agree to not follow a judicial child support order."[23] David contends that it is not fair for the court to recognize the parties' "verbal agreement for [Marissa] to leave the state and take the child" but not their informal agreement that he pay less child support.

"Trial courts, not parents, are the ultimate decision makers as to custody and are not bound by private agreements."[24] The same is true of child support: "We recognize that a parent may not waive the right to receive child support payments by acquiescence or private agreement unless that agreement is approved by the court,"[25]

---

[23]    The superior court correctly characterized this as a question of law. We therefore review it de novo. *See Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (observing that " '[w]hether the superior court applied the correct legal standard to its child support determination is a question of law' reviewed de novo" (alteration in original) (quoting *Geldermann v. Geldermann*, 428 P.3d 477, 482 (Alaska 2018))).

[24]    *McClain v. McClain*, 716 P.2d 381, 385 (Alaska 1986).

[25]    *Jaymot v. Skillings-Donat*, 216 P.3d 534, 546-47 (Alaska 2009); *see also*
(continued...)

which must subject the agreement to "scrutiny under [Alaska Civil] Rule 90.3."[26] The court was thus legally required to disregard the alleged private agreement allowing David to pay less than the ordered child support. It is true that the court also had the authority to review the parties' agreement that Marissa take the child to Arizona and to determine whether the move was in the child's best interests.[27] But the move was not challenged. David's motion to modify custody was based on allegations of domestic violence, not a claim that the move to Arizona somehow lacked legitimacy. There is no error — and no unfairness — in the court's decision to recalculate David's child support payments.

## C. The Superior Court Appropriately Considered Whether David Had Refinanced The Marital Home.

The court took up one other lingering issue at the close of the evidentiary hearing: David's failure to refinance the couple's marital residence, which he had agreed to do at the time of their dissolution in 2016, over four years earlier. The court cautioned David that if he did not act soon the court would have to force a sale. In the court's written order, entered the same day, the court noted that after David's efforts to refinance had fallen through he had placed the home up for sale, and that this was in compliance with David's "obligation to remove Marissa's obligation on the mortgage as long as he acts reasonably in pursuing the sale."

---

[25]     (...continued)
*Cox v. Cox*, 776 P.2d 1045, 1047-48 (Alaska 1989) (explaining adoption of Alaska Civil Rule 90.3 addressing child support based on legislative findings "that child support is often set at inadequate levels and . . . many parents underestimate actual child support costs").

[26]     *Nix v. Nix*, 855 P.2d 1332, 1334 (Alaska 1993).

[27]     *See Ott v. Runa*, 463 P.3d 180, 185-86 (Alaska 2020) (describing process by which court determines whether parent's move out of state justifies modification of physical custody).

David appears to argue that he was disadvantaged by the court's consideration of this issue at a hearing he believed would be devoted solely to questions of custody. His complaint is entirely without merit. First, the issue appears to have played no part in the court's custody decision; the court considered all the best interests factors and announced its decision denying David's motion before turning to other issues such as child support and the marital home. Second, the disposition of the marital home was a perennial issue the court had been monitoring for well over a year. Marissa had filed a motion to enforce the parties' property agreement in February 2019. The court held three status hearings on the issue in 2019, in April, July, and October, encouraging David to "more aggressively" work to fulfill his refinancing obligation. And significantly, David came to the custody hearing prepared to address the issue: his attorney asked him questions about the refinancing and had him identify exhibits including a refinancing application, a loan application, and a mortgage statement. We find no abuse of discretion in the court's consideration of this issue at the hearing.[28]

David also contends that the court "prejudge[d]" his character because of the refinancing issue. Bias cannot be inferred from adverse rulings alone; a party claiming a disqualifying judicial bias must prove "that the court formed an unfavorable opinion of the party from extrajudicial information"[29] or that the court heard, learned, or did "something intrajudicially so prejudicial that further participation would be unfair."[30] If the judge's perception of David's character was colored by David's failure to carry out

---

[28]    *Prentzel v. State, Dep't of Pub. Safety*, 169 P.3d 573, 592 (Alaska 2007) (explaining that we review superior court's procedural decisions for abuse of discretion).

[29]    *Downs v. Downs*, 440 P.3d 294, 299-300 (Alaska 2019).

[30]    *Id.* at 300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

the refinancing as he had promised to do, that is the result of experience through the course of the case, not "extrajudicial information," and there is no disqualifying bias. David gives us no other reason to doubt the court's impartiality. We therefore reject his argument that the court was prejudiced against him.

## V.    CONCLUSION

We AFFIRM the decisions of the superior court.