Tracy H. PARKS, Appellant,

v.

Robert J. PARKS, Appellee.

No. S–12984.

Supreme Court of Alaska.

Aug. 7, 2009.

Rehearing Denied Sept. 3, 2009.

Allison E. Mendel and Mary A. Gilson, Mendel & Associates, Anchorage, for Appellant.

Robert J. Parks, pro se, Anchorage.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

PER CURIAM.

## I. INTRODUCTION

The trial court presiding over the divorce proceeding between Tracy Parks and Robert Parks granted the parties joint legal custody of their daughter. Tracy argues that the trial court erred because it did not apply AS 25.24.150(g)'s rebuttable presumption against awarding joint legal custody to a parent with a history of perpetrating domestic violence. She also argues that the trial court erred because (1) it should not have awarded Robert a "self-executing" future change from supervised to unsupervised visitation; (2) the award of joint legal custody conflicts with a long-term domestic violence protective order that limits contact between the parties; (3) the court should have put its oral findings in

writing; and (4) the court should have specified how the visitation schedule will change if Tracy moves out of state.

We affirm in part, vacate in part, and remand, because further factual findings are necessary to determine whether subsection .150(g) applies, and because it was error to permit Robert's visitation to become unsupervised without a further order. But joint legal custody does not necessarily conflict with the long-term protective order, and the trial court permissibly declined to reduce its oral findings to writing and to specify how visitation will change if Tracy moves out of state.

## II. FACTS AND PROCEEDINGS

Robert and Tracy Parks were married in February 2005. Their daughter was born in August 2006.

On April 14, 2007, Robert assaulted Tracy. He threw things at her and tore off some of her clothes, resulting in multiple bruises. On April 18 Tracy was granted a short-term domestic violence protective order barring Robert from initiating contact with Tracy or her parents. A long-term domestic violence protective order was granted on May 7 barring Robert from contacting Tracy or her parents. The long-term protective order has been modified several times since, but these same restrictions still apply. The long-term protective order will remain in place until February 11, 2010.

Robert and Tracy separated the day of the April 2007 assault. Tracy and their daughter continued to live on Elmendorf Air Force Base, where Tracy is an enlisted member of the United States Air Force. On May 17 Robert pleaded no contest to assault and was given a one-year suspended imposition of sentence, was ordered to pay a fine, and was required to have no contact with Tracy (except for telephonic contact when she initiated it) and complete a state-approved twenty-four-week domestic violence intervention program within six months. On May 31 Robert was banned from the base because staff believed he was a danger to employees and possibly a danger to Tracy.

Tracy filed for divorce on July 3, 2007.

On October 3 the trial court conducted a long-term protective order modification hearing in conjunction with a custody hearing. Tracy alleged in the superior court that Robert violated the long-term protective order multiple times by contacting Tracy and telephoning her mother.

The divorce case went to trial in November 2007. Both parties were then unrepresented. Robert admitted at trial that he has "anger issues." He admitted he once threw water on Tracy before the April 2007 assault, was fired for throwing water on his boss, and broke a man's nose. A former wife of Robert's testified at this divorce trial that Robert had assaulted her once. Robert testified that he did not assault her. As of the time of the divorce trial, Robert had begun, but had not completed, the required domestic violence program. At the end of the trial, the court granted the divorce and ordered division of the property.

The trial court issued oral and written findings of fact and conclusions of law regarding custody on November 19. The court found that there was evidence of "domestic violence ... or a history of violence." The oral and written findings and conclusions did not mention AS 25.24.150(g).[1]

The trial court granted primary physical custody to Tracy and awarded the parties joint legal custody. It issued a visitation plan initially allowing only supervised visitation, but providing for an automatic change to unsupervised visitation when Robert completed a state-approved domestic violence treatment program. The court orally ordered that Robert provide Tracy and the court with evidence showing that the domestic violence treatment program he was then enrolled in was state-approved. Robert was not required to prove to the court that he had completed the program.

---

1. AS 25.24.150(g) provides in pertinent part: "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent ... may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."

Tracy retained an attorney and moved for reconsideration, arguing that the court had overlooked or misapplied AS 25.24.150(g) and had not properly considered that the long-term protective order prevented the parties from cooperating. She also argued that the court's findings were insufficient to support its conclusions and that it was error to give Robert a "self-executing" change to unsupervised visitation.

The court issued additional findings of fact and conclusions of law in which it decided that AS 25.24.150(g) did not apply, reasoning that the April 2007 incident did not result in "serious physical injury" and that the water-throwing incident was not an additional incident of domestic violence because there was no evidence Tracy was afraid before or afterwards. The court also found that Robert had credibly denied assaulting a former wife.

Tracy again moved for reconsideration, arguing that the court should have applied AS 25.24.150(g) and requesting that the court clarify its findings and conclusions in writing. The court denied Tracy's motion but gave her ten days in which to submit a draft custody order "to clarify any unclear portions." It does not appear that Tracy filed a draft custody order.

Tracy appeals.

## III. STANDARD OF REVIEW

A superior court has "broad discretion to determine custody awards in a divorce proceeding so long as the determination is in a child's best interests."[2] We "will not reverse a superior court's custody determination unless it abused its discretion or its controlling factual findings are clearly erroneous."[3]

The superior court abuses its discretion when it "considers improper factors in making its custody determination, fails to

consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others."[4] The superior court's factual findings are clearly erroneous if a review of the entire record leaves us "with the definite impression that a mistake has been made."[5] If a party challenges the adequacy of findings, we review the findings to decide "whether they give a clear indication of the factors considered important by the trial court or allow us to determine from the record what considerations were involved."[6]

## IV. DISCUSSION

### A. Whether It Was Error Not To Apply AS 25.24.150(g)'s Rebuttable Presumption Against Joint Legal Custody

Alaska Statute 25.24.150(g) creates a rebuttable presumption against awarding sole or joint legal or physical custody to a parent who "has a history of perpetrating domestic violence against the other parent."[7] Per subsection .150(h), a parent has a "history of perpetrating domestic violence" if the court finds that "during one incident of domestic violence, the parent caused serious physical injury or . . . the parent has engaged in more than one incident of domestic violence."[8]

If subsection .150(g) applies, the presumption can be overcome if a preponderance of the evidence shows that the perpetrating parent "has successfully completed an intervention program for batterers [and] does not engage in substance abuse."[9]

Tracy argues that the trial court clearly erred by finding that Robert did not have a history of perpetrating domestic violence, and that the trial court erroneously failed to apply subsection .150(g). She gives three reasons for arguing that Robert has a "histo-

**2.** *Thomas v. Thomas,* 171 P.3d 98, 102 (Alaska 2007).

**3.** *Id.* (citing *Elton H. v. Naomi R.,* 119 P.3d 969, 973–74 (Alaska 2005)).

**4.** *Id.* (internal quotation marks omitted) (quoting *Elton H.,* 119 P.3d at 973).

**5.** *Id.*

**6.** *Id.*

**7.** *See Puddicombe v. Dreka,* 167 P.3d 73, 77 (Alaska 2007).

**8.** AS 25.24.150(h).

**9.** *Id.*

ry of perpetrating domestic violence": (1) the water-throwing incident was an additional incident of domestic violence; (2) Robert's violation of the long-term protective order was an additional incident of domestic violence; and (3) the April 2007 assault resulted in "serious physical injury." She also argues that the trial court did not adequately "relax procedural requirements" for the pro se litigants at trial and abused its discretion by failing to elicit details about Robert's alleged conduct.

### 1. Whether it was error to find that the water-throwing incident was not an additional incident of domestic violence

Robert admitted at the November 16 trial that he had once thrown water in Tracy's face. The trial court concluded that this was not an act of domestic violence because it reasoned that the act was not "sufficient misconduct," at least in part because Tracy did not testify that she was afraid before or after the incident. Tracy argues that this conclusion was erroneous because "domestic violence," as that term is used in AS 25.24.150, does not require that the victim be afraid.

Alaska Statute 25.90.010 provides that in Title 25 " 'domestic violence' and 'crime involving domestic violence' have the meanings given in AS 18.66.990." Alaska Statute 18.66.990 provides in pertinent part:

> (3) "domestic violence" and "crime involving domestic violence" mean one or

more of the following offenses ... or an attempt to commit the offense, by a household member against another household member: (A) a crime against the person under AS 11.41.

Alaska Statute 11.41.230(a)(3) defines assault in the fourth degree as "recklessly plac[ing] another person in fear of imminent physical injury."

■ Throwing water at Tracy was therefore "domestic violence" within the meaning of AS 25.24.150 if Robert, in doing so, "attempted" to place her in fear of imminent physical injury. It is irrelevant whether Tracy was actually placed in fear. We therefore remand for a determination whether Robert attempted to place Tracy in fear of imminent physical injury when he threw water at her. If he did, the trial court must determine whether Robert has overcome AS 25.24.150(g)'s presumption against joint legal custody.[10]

### 2. Whether it was error not to find that Robert's alleged violations of the long-term protective order were additional incidents of domestic violence

■ Alaska Statute 18.66.990(3) defines "domestic violence" to include "(G) violating a protective order under AS 11.56.740(a)(1)."[11] In finding that there was only one incident of domestic violence, the trial court did not address Tracy's allegation that Robert violated the long-term protective order.[12]

---

**10.** At oral argument before us Robert indicated that he had made substantial changes in his life. These and other circumstances might be relevant to a claim that he has been "rehabilitated."

**11.** AS 11.56.740(a)(1) provides in part: "(a) A person commits the crime of violating a protective order if the person is subject to a protective order (1) issued or filed under AS 18.66 and containing a provision listed in AS 18.66.100(c)(1)-(7) and knowingly commits or attempts to commit an act with reckless disregard that the act violates or would violate a provision of the protective order."

AS 18.66.100(c) provides in part: "(c) A protective order under this section may ... (2) prohibit the respondent from telephoning, contacting, or otherwise communicating directly or indirectly with the petitioner."

**12.** Tracy did not specifically argue in her motions for reconsideration that Robert's alleged long-term protective order violations amounted to domestic violence. Her first motion for reconsideration asserted that "the record contains sufficient evidence that" Robert had a history of domestic violence but did not specifically mention long-term protective order violations. Her second motion for reconsideration listed alleged evidence of Robert's violent history, but did not mention any violations of the long-term protective order.

We do not consider claims raised for the first time on appeal, absent plain error. *Mellard v. Mellard*, 168 P.3d 483, 489 (Alaska 2007). "Plain error occurs when an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Katz v. Murphy*, 165 P.3d 649, 662 (Alaska 2007) (internal quotation marks omitted) (quoting *D.J. v. P.C.*, 36 P.3d 663,

■ Several witnesses at the October 3, 2007 hearing testified that Robert had telephoned Tracy and sent her gifts, and had telephoned Tracy's mother to ask about Tracy. Such conduct could be deemed to have violated the long-term protective order, which prohibited Robert from initiating contact with Tracy or her mother. Because Robert admittedly assaulted Tracy on April 14, 2007, if he also violated the long-term protective order, it was error to find that only one incident of domestic violence occurred.

But the court made no findings following the October 3 hearing or the November custody trial about whether Robert had violated the long-term protective order. We therefore remand for a determination whether Robert violated the long-term protective order and, if he did, whether he has overcome the statutory presumption against joint legal custody.

### 3. Whether it was error to conclude that the April 2007 assault did not result in "serious physical injury"

■ The trial court found that Robert did not have a "history of domestic violence" under AS 25.24.150 because his April 2007 assault on Tracy did not cause "serious physical injury." The court applied the definition of "serious physical injury" found in AS 11.81.900(b)(56).[13] Tracy argues that this is the wrong definition because Title 25 does not explicitly incorporate the definition set out in AS 11.81.900(b)(56).[14]

Title 25 does not define "serious physical injury" and this court has not yet interpreted

668 (Alaska 2001)). Failing to consider Robert's alleged long-term protective order violations in determining whether AS 25.24.150(g) applied creates a high likelihood of injustice and was sufficiently obvious to be plain error.

13. AS 11.81.900(b)(56) defines "serious physical injury" as

(A) physical injury caused by an act performed under circumstances that create a substantial risk of death; or
(B) physical injury that causes serious and protracted disfigurement, protracted impairment of health, protracted loss or impairment of the function of a body member or organ, or that unlawfully terminates a pregnancy.

the term. The legislative history of the 2004 bill that added subsections .150(g)-(i) does not address the meaning of "serious physical injury" and sheds little light on the meaning of the phrase.

We hold that Title 11's definition of "serious physical injury" applies to AS 25.24.150. The legislature provided no other definition that might apply. We assume it would have done so if it had wanted some other definition to apply. The statutory presumption that arises once a history of domestic violence is found is sufficiently onerous and disruptive that we are unpersuaded that the legislature expected courts to adopt and apply some less rigorous or common law definition. The trial court therefore did not err in applying Title 11's definition. Tracy does not dispute or appeal the trial court's conclusion that the April 2007 assault did not result in serious physical injury as that term is defined in Title 11.

### 4. Whether it was error not to relax procedural requirements and elicit details about the alleged domestic violence

Tracy argues that because the parties were pro se, the trial court should have relaxed procedural requirements in order (1) to inform Tracy that, because the court did not believe Robert's former wife's testimony, Tracy could not use his alleged abuse against his former wife to meet the "history of domestic abuse" requirement, and (2) to inquire further into whether the water-throwing incident made Tracy afraid.[15]

In denying Tracy's second motion for reconsideration, the trial court stated:

14. Tracy also argues that a broader, less rigorous definition is appropriate because domestic violence can occur under Title 25 even if the elements of a Title 11 criminal offense have not been met. She notes that if a parent "attempts" to commit a Title 11 offense against a person, it is domestic violence under Title 25.

15. Tracy also argues that "[t]he extent of domestic violence between the parties and the appropriate legal framework to be applied was squarely in dispute and it was error for the trial court not to address the issue in its findings so that its decision could be meaningfully reviewed by this court." The contention that the court's findings did not address the issue is without merit. The trial court addressed the issue of domestic vio-

During a divorce trial, the court does not aid either party in presentation of evidence. That applies whether or not one party has a history of domestic violence. During the custody portion of a trial, the focus is on the best interests of the children, but again assisting one party to present evidence or call witnesses would not occur.

■■■ Tracy's argument that the trial court should have informed her that Robert's alleged abuse of a former wife would not satisfy the "history of domestic abuse" prong is not persuasive. In essence, Tracy is inviting us to create a rule requiring trial courts to inform pro se parties of the court's witness credibility assessments during trial. We decline to adopt such a rule because it would go beyond our decisions that hold that a "trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously trying to accomplish." [16] And such a rule would require the trial court to assist one party in presenting the evidence needed to meet the party's evidentiary burdens at trial, and would potentially create an appearance that the court is no longer impartial and unbiased.

■■■ Tracy's argument that the court should have made further inquiries into the water-throwing incident is more persuasive. Alaska Statute 25.24.150(g) requires trial courts to consider alleged incidents of domestic violence, and here the trial court was in a position to question the pro se litigants about facts relevant to the issue. On remand, the trial court should solicit from the parties the information it needs to determine whether the water-throwing incident was an act of domestic violence.

## B. Whether It Was Error To Order an Automatic Future Change from Supervised to Unsupervised Visitation

Tracy argues that, even if AS 25.24.150(g) does not apply,[17] the trial court erred by ordering that Robert's visitation would automatically change from supervised to unsupervised when he completed an approved domestic violence program, without requiring Robert to file proof of completion with the court.[18] The court's parenting plan requires Robert to participate in Alcoholics Anonymous (AA) meetings, report to Tracy on his attendance, and have his AA sponsor report to Tracy about Robert's participation. Tracy contends that the trial court abused its discretion because it is not in their daughter's best interest to allow Robert unsupervised visitation without requiring him to prove his compliance to the court. She argues that an eighteen-month-old child "is not well-situated to protect itself if a parent is impaired or dangerous" and that it is not in their daughter's best interest for Tracy to bear the burden of monitoring Robert's compliance with the court's requirements because Tracy has no way to know whether Robert's reports or those of his AA sponsor are accurate and honest. Robert contends in response that the court did supervise Robert's completion of the domestic violence program.

■■■ Tracy's argument is persuasive. It does not appear that she has access to all the information necessary to show that Robert had not complied with the requirements, and

lence in its findings when it denied Tracy's first motion for reconsideration. The court explicitly found that the April 2007 assault did not cause "serious physical injury," that the water-throwing incident was not a second incident of domestic violence, and that Robert credibly denied allegations that he had assaulted a former wife.

16. *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987).

17. If Robert had a history of perpetrating domestic violence under AS 25.24.150(g), unsupervised visitation would not be permitted unless he established by a preponderance of the evidence that he had completed a substance abuse treatment program, he was not abusing drugs or alcohol, he did not pose a danger of harm to the child, and unsupervised visitation was in the child's best interests. AS 25.24.150(j).

18. Tracy did not make this precise argument in her first or second motion for reconsideration. She there linked her "self-executing" change-of-visitation argument to AS 25.24.150(g). But she preserved her core factual and legal contentions that the change required no further court action and no proof of compliance, and erroneously put the burden of proof on Tracy.

the court did not explain why she should have the burden of persuasion on this issue. We assume Robert had ready access to the information needed to report accurately. Because the burden of proving compliance with the AA and domestic violence treatment requirements was not placed on Robert, it was possible he could obtain unsupervised visits without having actually satisfied either requirement. We conclude that the automatic change provision was not in their daughter's best interests and that entering it was therefore an abuse of discretion.[19] Robert should have the burden of demonstrating to the trial court that he has changed enough to justify increased or unsupervised visitation.

We are also unconvinced by Robert's contention that the court did supervise completion of Robert's domestic violence program. The court merely questioned Robert's participation in the program, recommended that he make the records of his enrollment available to the court, heard testimony that he was on his way to graduating from the program, and concluded that he was eight weeks from finishing. Furthermore, Robert enrolled in the Cook Inlet program, and not one of the two state-approved domestic violence programs; he was unaware that he was supposed to have cleared the Cook Inlet program with the prosecutor's office. The court, in its oral findings, noted that "there was testimony [Robert] provided and his case manager from Cook Inlet provided that would indicate that the [M]unicipality of Anchorage has accepted the treatment ... to meet their requirements for domestic violence treatment." But the court also noted that Robert must "provide both mother and the court record something in writing from the municipality indicating that's, in fact, true." As of the date the trial court denied Tracy's first motion for reconsideration, Robert had not filed that confirming paperwork.

### C. Whether It Was Error To Award Joint Legal Custody when the Long Term Protective Order Limited Contact Between the Parties

Tracy argues that the trial court erred by finding that, as joint legal custody requires, Tracy and Robert can work together on major issues concerning their daughter.[20] She argues that the finding was clearly erroneous because there is no evidence Tracy and Robert can cooperate, and that Robert's banishment from Elmendorf Air Force Base shows they cannot. She also argues that the court erred by requiring the parties to cooperate because cooperation conflicts with the long-term protective order.

In denying Tracy's similar argument on reconsideration, the trial court stated that the long-term protective order had not been violated after it was modified on October 3, 2007 and found that the parameters established in the long-term protective order were working.

The long-term protective order currently restricts the parties to two ten-minute telephone calls per week, prohibits Robert from contacting Tracy's parents, and limits email contact to two days per week (although Tracy is permitted to send Robert unlimited photographs and videos of their daughter). As Tracy contends, these communication limitations could make it difficult to make decisions regarding their daughter, especially given the parties' history of animosity. But, as the trial court explained to the parties, joint legal custody means that the parties need to discuss "major life decisions for [their daughter]" and that it "does not mean day to day decisions for [their daughter] have to be discussed." The trial court implicitly found that the parties could cooperate well enough to make these major decisions within the constraints of the long-term protective order. The trial court was in the best posi-

---

**19.** *Thomas v. Thomas,* 171 P.3d 98, 102 (Alaska 2007) ("We give the superior court broad discretion to determine custody awards in a divorce proceeding so long as the determination is in a child's best interests.").

**20.** *See McClain v. McClain,* 716 P.2d 381, 386 (Alaska 1986) (holding that "cooperation be-

tween parents is essential if the arrangement is to be in the best interests of the child"); *see also Farrell v. Farrell,* 819 P.2d 896, 899 (Alaska 1991) (stating that "joint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest").

tion to make this determination,[21] and its implied finding was not clearly erroneous.

### D. Whether It Was Error for the Trial Court Not To Further Reduce Its Findings of Fact and Conclusions of Law to Writing

Tracy contends that the trial court's findings and conclusions are inadequate as matter of law because the court issued no written findings regarding some relevant custody factors and because some of its verbal orders were confusing and conflicted with written orders. The court entered extensive written findings and conclusions and a written custody and visitation plan. It also entered two extensive clarifying written orders on reconsideration and made oral findings.

 Trial courts are not required to state all findings in their written orders "so as long as the basis for their decisions is clear from the record and thus susceptible to review."[22] The trial court's findings were sufficiently clear that we are able to review them. And, even though both parties appear to have been confused to some extent about the court's findings and orders, they had several opportunities to ask the court for explanations. Also, the trial court gave Tracy, who was by then represented, an opportunity to submit a written draft custody order to eliminate any confusion. She did not do so. We therefore decline to remand for issuance of a written order containing all the requirements and terms of the custody arrangement.

### E. Whether It Was Error Not To Address How the Visitation Schedule Will Change if Tracy Leaves Alaska

 Tracy argues that it was not in their daughter's best interests for the trial court to fail to address how the visitation schedule would change if the Air Force transfers Tracy out of Alaska. Tracy did not raise this argument at trial or in her first or second motions for reconsideration. Any possible error was not sufficiently obvious or likely enough to result in injustice to be plain error.[23] Furthermore, if Tracy is transferred, and she and Robert are unable to agree to a visitation schedule, either party can move for modification of the custody order based on a change in circumstances.[24] The trial court did not abuse its discretion by failing to specify in advance what the visitation schedule will be if Tracy moves.

## V. CONCLUSION

We AFFIRM in part, VACATE in part, and REMAND for further proceedings in accordance with this opinion.

MATTHEWS, Justice, not participating.

---

21. *See Millette v. Millette*, 177 P.3d 258, 264 (Alaska 2008) (holding that superior court was in best position to make factual determination because it required assessing credibility and each party's testimony); *Adams v. Adams*, 131 P.3d 464, 467 (Alaska 2006) (deferring to superior court's factual finding because "the superior court was in the best position to assess the demeanor and credibility of all the witnesses").

22. *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997).

23. *See Mellard v. Mellard*, 168 P.3d 483, 489 (Alaska 2007); *Katz v. Murphy*, 165 P.3d 649, 662 (Alaska 2007).

24. *Chesser–Witmer v. Chesser*, 117 P.3d 711, 717 (Alaska 2005) ("An award of child custody or visitation may be modified if the court determines that: (1) a change in circumstances requires the modification of the award and (2) the modification is in the best interests of the child.... Such a change exists as a matter of law when a custodial parent moves out of state. This rule includes custodial parents who have joint custody." (internal quotation marks omitted) (quoting AS 25.20.100(c), and citing *Barrett v. Alguire*, 35 P.3d 1, 5–6 (Alaska 2001)).