NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JASMINE R., | ) |
| | ) Supreme Court No. S-19020 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-23-04854 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| CORNELL R., | ) AND JUDGMENT[*] |
| | ) |
| Appellee. | ) No. 2082 – March 19, 2025 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Adolf V. Zeman, Judge.

Appearances: Jasmine R., pro se, Anchorage, Appellant. Cornell R., pro se, Anchorage, Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

The superior court granted parents joint legal and shared physical custody of their child following a trial. The mother appeals, challenging the court's findings on domestic violence, its weighing of the best interest factors, and its decision to bifurcate trial of the custody and property issues. She also reiterates a request to change the child's last name. We see no error or abuse of discretion except for one instance: the court's apparent failure to consider, in the context of the best interests factors, the

---

[*]    Entered under Alaska Appellate Rule 214.

findings underlying a domestic violence protective order that had been entered early in the proceedings. We vacate the custody order and remand for further consideration of the effect those findings may have on the custody determination.

## II.    FACTS AND PROCEEDINGS

Jasmine and Cornell R.[1] were married in August 2020 and separated in February 2023. They have one child together, a son, and each has another child from a previous relationship.

### A.    Domestic Violence Proceedings

In early February 2023 Jasmine petitioned for both a 20-day and a long-term domestic violence protective order (DVPO) against Cornell. She alleged that he threatened her and exposed himself to her children and that she feared he would hurt her. A magistrate judge issued a 20-day ex parte DVPO the same day. The order prohibited Cornell from, among other things, "communicat[ing] in any way, directly or indirectly, with [Jasmine]" except through her mother to arrange childcare.

A magistrate judge later held a hearing on the long-term DVPO. Jasmine testified that Cornell had "called [her] multiple times" while the 20-day order was in effect, including once when "he started yelling and just going off." She testified that he also "had his sister-in-law call [her]" to defend his actions. The magistrate judge granted the long-term DVPO, citing Jasmine's testimony that there were "numerous incidents of contact with her" in violation of the ex parte order. The order limited Cornell to video visits with the child under the supervision of Jasmine's mother. At the time of the hearing there was an active warrant out for Cornell's arrest because of these violations, and the magistrate judge noted that he "was taken into custody" following the hearing.

---

[1]    Initials have been used to protect the identity of the parties.

**B. Divorce And Custody Proceedings**

Jasmine filed for divorce that same day, asking that she be given sole decision-making authority over their child and that Cornell be limited to supervised weekend visitation.[2] The court held an interim custody hearing in May on Cornell's motion for shared physical and joint legal custody. Arguing against the restrictive visitation limits then in place, Cornell contended that he had violated the 20-day DVPO only because he misunderstood its restrictions. Jasmine testified that Cornell "was verbally abusive to [her]" and "physically [and] sexually abusive to [the] children." Cornell disputed these allegations.

The court issued an interim custody and visitation order in June. It awarded Jasmine sole legal and primary physical custody and ordered that Cornell have unsupervised visitation every other weekend, one weekday evening visit on off weeks, and video visits while the child was with Jasmine.

In August Jasmine moved for an emergency custody order that would again limit Cornell to supervised visitation, asserting that he had been charged with driving under the influence (his third DUI), that the child was having difficulty adjusting to the visitation schedule, and that the child sometimes returned from visiting Cornell with various injuries. The court denied Jasmine's motion following an evidentiary hearing. It explained that while it understood her concern about the DUI, it did not find there was any harm to the child, who had not been present at the time of the arrest. The court credited Cornell's testimony that he did not drink alcohol when the child was in his custody. The court also found no evidence that Cornell had caused any of the child's injuries.

---

[2] The divorce case and the protective order proceeding were eventually consolidated.

In January 2024 the court held an informal divorce and custody trial at which it heard testimony from Jasmine, Cornell, several relatives, and Jasmine's expert witness in the area of domestic violence. Following trial the court entered a divorce decree, which provided in part that "[p]roperty and debt will be determined at a later date by the Court if the parties are unable to resolve the property issues on their own." The court addressed custody in separate findings of fact and conclusions of law, analyzing the best interests factors identified in AS 25.24.150(c). The court "decline[d] to enter a finding that either party [had] engaged in a pattern of domestic violence"[3] but found that the substance abuse factor favored Jasmine.[4] Finding that the other factors favored neither parent, the court concluded that they should have joint legal custody and that they should share physical custody, though with Jasmine having more overnights.

The court slightly modified the custody and visitation schedule on Jasmine's later motion for reconsideration. Jasmine appeals.

## II.     STANDARD OF REVIEW

"Trial courts have broad discretion in determining child custody."[5] "We will set aside the superior court's custody determination only if the court abused its discretion or if its findings of fact are clearly erroneous."[6] "The superior court abuses its discretion if it considers improper factors in determining custody, fails to consider statutorily mandated factors, or assigns disproportionate weight to some factors while

---

[3]     *See* AS 25.24.150(c)(7) (requiring court to consider "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents").

[4]     *See* AS 25.24.150(c)(8) (requiring court to consider "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child").

[5]     *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

[6]     *Id*.

ignoring others."[7]  "A court's factual findings are clearly erroneous when, after reviewing the record, we are left 'with a definite and firm conviction that a mistake has been made.' "[8]  Finally, "[w]hether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[9]

## III.  DISCUSSION

### A.  Evidence Suggesting A History Of Perpetrating Domestic Violence Appears To Have Been Overlooked In The Best Interests Analysis.

Jasmine argues that the superior court erred by awarding Cornell joint legal and shared physical custody when it should have applied the rebuttable presumption in AS 25.24.150(g), which states that "a parent who has a history of perpetrating domestic violence . . . may not be awarded . . . joint legal custody . . . or joint physical custody of a child."  A parent has such a history if the court finds "that the parent has engaged in more than one incident of domestic violence."[10]  Jasmine contends that Cornell committed a number of domestic violence incidents, pointing to (1) her long-term DVPO against him; (2) domestic violence allegations brought against him by two other women; (3) his alleged sexual misconduct with her son; and (4) her expert witness testimony about domestic violence and its effects on children.  We address each category of evidence in turn.

---

[7]  *Lewis G. v. Cassie Y.*, 426 P.3d 1136, 1142 (Alaska 2018) (quoting *Harris v. Governale*, 311 P.3d 1052, 1055 (Alaska 2013)).

[8]  *Id.* (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008), *overruled on other grounds by Geldermann v. Geldermann*, 428 P.3d 477 (Alaska 2018)).

[9]  *Jill Y. v. Casey Y.*, 463 P.3d 833, 840 (Alaska 2020) (quoting *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1090 (Alaska 2015)); *see also Solomon v. Solomon*, 420 P.3d 1234, 1241 (Alaska 2018) ("In reviewing the superior court's determination that a parent has a history of perpetrating domestic violence, we accept the court's factual findings unless they are clearly erroneous.").

[10]  AS 25.24.150(h).

### 1.    Protective order violations

"[V]iolating a protective order under AS 11.56.740(a)(1)" is by definition an incident of domestic violence.[11]  It requires that the person "knowingly commit[] or attempt[] to commit an act with reckless disregard that the act violates . . . a provision of the protective order."[12]  Because each such violation is a separate offense, repeated violations of the same protective order may constitute a history of perpetrating domestic violence.[13]

Here, the record supports a finding that Cornell violated the 20-day DVPO more than once.  During the long-term DVPO hearing, Jasmine testified that Cornell "called [her] multiple times" during the 20-day protective period.  She also testified that "he had his sister-in-law call [her]" to defend his actions.  These acts appear to violate the 20-day order's mandate that Cornell "not . . . contact, or communicate in any way, directly or indirectly, with [Jasmine]" except through Jasmine's mother to arrange childcare.  The magistrate judge who granted the long-term DVPO noted in his findings that Jasmine testified to "numerous incidents of contact" during the 20-day order's protective period.  Cornell did not deny that contact occurred, only asserting through counsel that he "did not ever threaten [Jasmine]" and that any violations were unintentional.  But if two or more violations were committed knowingly and with reckless disregard for the fact that they violated the protective order, they could still constitute a "history of perpetrating domestic violence" sufficient to trigger the AS 25.24.150 presumption.

---

**11**      AS 18.66.990(3)(G).

**12**      AS 11.56.740(a)(1).

**13**      *See Parks v. Parks*, 214 P.3d 295, 300 (Alaska 2009) (framing issue as whether father's multiple violations of same order "were additional *incidents* of domestic violence" (emphasis added)); *Adam F. v. Caitlin B.*, 551 P.3d 553, 559 n.9 (Alaska 2024) (explaining that, though not appealed, appellant's "three violations of a protective order . . . each constitute an act of domestic violence").

The court's post-trial findings of fact and conclusions of law refer to Jasmine's allegations, raised in two earlier hearings, that Cornell had abused her older son, allegations we discuss below.[14] But the court does not address the findings that actually prompted the DVPO's issuance: the "numerous incidents of contact" during the protective period.

Alaska Statute 25.24.150(g) requires a superior court to consider alleged incidents of domestic violence and make findings about them specific enough to "allow us to glean from the record what considerations were involved" in reaching its conclusions.[15] In *Parks v. Parks*, where the superior court heard evidence from an unrepresented party of an incident that *could* be defined as domestic violence, we directed the court on remand to inquire further into whether it was in fact an act of domestic violence that would trigger the statutory presumption.[16] In so doing we determined that such an inquiry would not impermissibly require the court to "assist [the unrepresented] party in presenting the evidence needed to meet the party's evidentiary burdens at trial, [or] potentially create an appearance that the court [was] no

---

[14] The first of those hearings was on Cornell's motion for interim custody, in which he argued that the DVPO's findings did not justify limiting his custody rights because the magistrate judge "found only that Cornell violated the short-term order, which is, at most, a single incident of domestic violence not involving serious injury." Cornell's argument at the hearing was thus focused on the DVPO, and the court, though not the judicial officer who issued the DVPO, was presumably aware of the factual basis on which the DVPO rested.

[15] *Sarah D. v. John D.*, 352 P.3d 419, 434 (Alaska 2015) (quoting *Dragseth v. Dragseth*, 210 P.3d 1206, 1208 (Alaska 2009)) (remanding for superior court to make more specific findings about alleged incidents of domestic violence); *Faye H. v. James B.*, 348 P.3d 876, 879-80 (Alaska 2015) (directing superior court on remand to make finding as to whether spouse violated no-contact order and whether spouse committed more than one incident of domestic violence for purposes of statutory presumption against custody award).

[16] 214 P.3d at 301-02.

longer impartial and unbiased"; we held that the statute required the inquiry regardless of the adequacy of the parties' presentations.[17]

Here, there is no indication in the post-trial findings and conclusions that the court considered the alleged "numerous incidents of contact" during the 20-day order's protective period when deciding whether there was a history of perpetrating domestic violence. We note that it is possible the superior court could decide not to give collateral estoppel effect to the magistrate judge's factual findings, a decision we would review for abuse of discretion.[18] It is also possible the court could decide that, although a history of perpetrating domestic violence was proven, triggering the statutory presumption against an award of custody, the presumption had been rebutted.[19] But without a clear indication that the court considered this evidence of domestic violence, we must vacate the custody award and remand for the court's further consideration.

### 2. Domestic violence in prior relationships

Jasmine next argues that she demonstrated Cornell's history of perpetrating domestic violence through evidence about his prior relationships. First Jasmine cites evidence that another woman petitioned for and was granted a long-term DVPO against him. But that protective order is not in the record, and there was no additional testimony about it. Critically, there is no evidence that the woman and Cornell were "domestic living partner[s]" as is required for the AS 25.24.150(g)

---

[17]    *Id.*

[18]    *See Harris v. Governale*, 311 P.3d 1052, 1057 (Alaska 2013). We also note some ambiguity in the DVPO's findings; the magistrate judge found not that "numerous incidents of contact" had occurred, but rather that "[Jasmine] testified to numerous incidents of contact."

[19]    *See* AS 25.24.150(h) (identifying evidence necessary to rebut presumption, including completion of batterers' intervention program, absence of substance abuse, and necessity of parent's involvement for child's best interests).

presumption to apply.[20]   The superior court therefore need not have credited this evidence.

Second, Jasmine refers to allegations of abuse during Cornell's relationship with the mother of his other child.  In support, Jasmine submitted a letter purportedly from that woman.  In the letter the woman describes incidents of domestic violence between her and Cornell in 2006, as well as incidents their daughter allegedly witnessed while visiting Cornell in 2021.  But the letter was hearsay and was not supported by the writer's testimony, either by affidavit or live at trial.

It is true that a superior court "has a duty to inform a self-represented litigant 'of the proper procedure for the action he or she is obviously attempting to accomplish.' "[21]   We have also held that when a court not only advises a self-represented litigant about procedure but also "attempt[s] to focus . . . attention on the relevant issues," the court's "failure to do more [is not] . . . an abuse of discretion."[22] Here, the superior court informed Jasmine that the letter was "technically hearsay" and would not be given much weight unless the writer came to court to testify.  At the hearing on Cornell's interim custody motion, eight months before trial, the judge told Jasmine, "I can certainly read [the letter] and the issue is though I probably will not put much weight on [it]," explaining that "people come here . . . [and] are put under oath."[23] Jasmine acknowledged this, saying, "Oh, I didn't know that."

---

**20**   *See Timothy W. v. Julia M.*, 403 P.3d 1095, 1110 (Alaska 2017) (determining that term "domestic living partner" in AS 25.24.150(g) is not necessarily coextensive with "household member" and may include non-spousal relationships).

**21**   *Torrence v. Blue*, 552 P.3d 489, 494 (Alaska 2024) (quoting *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)).

**22**   *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1273 (Alaska 2001).

**23**   The court also noted that it was "not questioning [the letter's] actual validity" but rather that the way the letter was presented did not allow the court to give

The superior court was plainly attempting to walk the fine line between providing permissible guidance to an unrepresented litigant and prohibited advocacy on her behalf. Because the court adequately notified Jasmine about the evidentiary advantages of having live testimony at trial and attempted to focus her attention on the hearsay issue, we see no abuse of discretion in the way it addressed her evidence of these alleged incidents of domestic violence. And because the only evidence she offered was hearsay, the court did not err by failing to cite it in its findings about domestic violence.

### 3. Cornell's inappropriate conduct with Jasmine's older son

Jasmine characterizes two alleged instances of Cornell's inappropriate conduct with her older son as acts of domestic violence. First, she alleges that Cornell was helping the child study for a spelling test, which included the word "circumstance." However, the word "somehow turned into circumcision," and Cornell exposed himself to show her son what an uncircumcised penis looked like. Second, Jasmine alleges that Cornell "touched [her son] inappropriately." The superior court concluded that the evidence regarding these allegations was insufficient to support a finding of domestic violence based on these allegations and that although Cornell's "actions may have been misplaced or inappropriate, [they were] not with an abusive intent."

The evidence of each incident was ambiguous enough that we cannot see any clear error in the superior court's findings. Regarding the "circumcision" allegation, while Cornell did not deny that the incident occurred, he explained that there was "nothing sexual" about it and that the incident occurred without intent to harm. Regarding the "inappropriate touching" incident, Cornell denied that it happened and testified that a polygraph test proved his innocence.

---

it "the weight that [Jasmine would] probably like," stressing again that "typically, we have people come in and testify."

A finding that these incidents involved domestic violence would depend almost entirely on witness testimony. It is the province of the trial court, not this court, to judge witness credibility, and "[t]he trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony.' "[24] We are not left with a definite and firm conviction that the superior court erred when it declined to find domestic violence based on these allegations.

### 4. Expert testimony

Finally, Jasmine argues that the superior court should have credited her expert witness's testimony that Cornell's behavior was like that expected of a perpetrator of domestic violence. The expert testified that "perpetrators of domestic violence . . . don't give any thought to how it impacts other people" and, in line with this profile, that Cornell "had no consideration for the impact [of his actions] on [Jasmine's son]." But the expert also confirmed that she had never spoken to either Cornell or the children. It is because of this foundational gap that the court "opted not to give [her testimony] any weight." Again, given that we generally defer to a trial court's assessment of witness credibility,[25] we see no error in the court's decision to give little weight to the expert witness's testimony.

### B. The Superior Court Adequately Considered All Best Interests Factors Except The Domestic Violence Factor.

"In making a custody decision based on the best interests of the child," the superior court "must consider each statutory factor in [AS 25.24].150(c) and must discuss the factors that it deems relevant to the case before it."[26] Jasmine challenges

---

[24] *Moore v. Moore*, 349 P.3d 1076, 1080 (Alaska 2015) (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011)).

[25] *Solomon v. Solomon*, 420 P.3d 1234, 1241-42 (Alaska 2018) (citing *Price v. Eastham*, 128 P.3d 725, 731 (Alaska 2006)).

[26] *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010).

the court's findings about each statutory factor except for the child's preference factor.[27] The court found that all the remaining factors were neutral except AS 25.24.150(c)(8), "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child," which the court found favored Jasmine.

### 1. The court did not clearly err by finding that the child did not have any special needs.

The court first looked at the "physical, emotional, mental, religious, and social needs of the child."[28] The court considered this factor neutral because the child "appear[ed] to have all of the normal needs of a child his age," being "a happy and healthy child without any special needs." Jasmine contends, however, that the child has an "adjustment disorder" and "sensory processing disorder" that must be accounted for. Her trial brief directed the court to an "Alaska Behavioral Health – Treatment Plan" for the child, which cites a diagnosis of an adjustment disorder and notes the family's disruption by divorce as a contextual factor. The plan was attached to Jasmine's expert witness's report, but it was not discussed at trial or admitted into evidence. Jasmine herself never mentioned in her trial testimony that the child had any needs beyond those of a normal child. We are not left with a definite and firm conviction that the superior court erred in concluding that the child did not have any special needs.

### 2. The court did not clearly err by finding that both parents were capable of meeting the child's needs.

Next, the court considered the "capability and desire of each parent to meet [the child's] needs."[29] The court found that both parents were capable of meeting

---

[27] The court did not consider this factor, finding that the child was too young to express a preference for one parent over the other.

[28] AS 25.24.150(c)(1).

[29] AS 25.24.150(c)(2).

the child's needs and had been doing so since Cornell's visitation resumed under the interim custody order. Jasmine argues that Cornell cannot meet the child's needs because he refuses to co-parent with her; as examples she states that he does not respond to her texts and has "hung up on [her] multiple times while [she was] talking to [the child]." But the court could find that Cornell was capable of meeting the child's needs despite the parents' communication difficulties; Jasmine's cursory treatment of this issue does not persuade us that the court's finding was clearly erroneous.

Also relevant to this factor is Jasmine's argument that Cornell wanted to remove the child from preschool, which she contended would not be in the child's best interests.[30] But she does not direct us to any evidence that supports this allegation. Cornell did assert in a pleading that he disagreed with Jasmine's education proposals and that "[the child] should be enrolled in an independent childcare facility, not at [Jasmine's] church," but he did not dispute that the child should be educated. Again, we are not persuaded that the superior court clearly erred in its assessment of this factor.

### 3. The court did not clearly err by finding that love and affection existed between the child and both parents.

The court also considered "the love and affection existing between the child and each parent,"[31] which the court found to favor neither parent over the other. Jasmine concedes that Cornell loves their child, but at the same time she argues that he is "only concerned about his needs and not the needs of [the child]." She offers no evidence in support of her argument, and we therefore cannot conclude that the superior court clearly erred.

---

[30] Jasmine discusses this issue in the context of the child's needs and the love and affection between each parent and the child, AS 25.24.150(c)(1), (4), but we deem it most relevant to the parents' ability and willingness to meet the child's needs.

[31] AS 25.24.150(c)(4).

**4.     The court did not clearly err by finding that both parents could provide stability and continuity.**

Next, the court weighed "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."[32]  The court found that the child has a strong relationship with both parents and their families, and that although he lived primarily with Jasmine, he has had regular visitation with Cornell since June 2023.  Jasmine argues that the factor favors her because she has been the primary caregiver.[33]  She also contends that the child's behavior worsened after visits with Cornell, implying that his environment is unsatisfactory or that switching between environments brings instability.

Jasmine and her mother testified that the child's behavior had worsened, but there was no evidence that this was because of visits with Cornell.  Both parents submitted evidence of the child's aggressive behavior at preschool, but again there was no evidence of what caused it.  Cornell testified that the child was always excited to see him; Jasmine's mother testified that she had seen the child enjoy his time with Cornell, though often wanting to return home soon after visits began.

A finding that both parents could provide a stable environment has sufficient support in the record.  Given our reluctance to reassess the superior court's credibility determinations,[34] we conclude, again, that the court did not clearly err in its assessment of this factor.

---

[32]     AS 25.24.150(c)(5).

[33]     Alaska law "does not automatically give a custodial preference to the primary caregiver," although that status is relevant to the stability factor.  *Brett M. v. Amanda M.*, 445 P.3d 1005, 1010 (Alaska 2019) (quoting *Blanton v. Yourkowski*, 180 P.3d 948, 953 (Alaska 2008)).

[34]     *Harris v. Governale*, 311 P.3d 1052, 1057 (Alaska 2013).

**5.    The court did not clearly err by finding that both parents could encourage a close relationship between the child and the other parent.**

Next, the court considered the parent's willingness and ability to encourage a close and continuing relationship with the other parent.[35]   The court concluded that although "communications have been strained," the parents could "effectively communicate . . . to care for their son and allow a continuing relationship with the other parent."  Jasmine argues that Cornell is antagonistic and makes decisions without her.  She also contends that he does not allow her to speak to the child when he has custody and has withheld some of her allotted custody time.

Both parties' communications were sometimes antagonistic, but the evidence supports the court's conclusion that ultimately they were able to follow the custody schedule.  The court did not clearly err in finding that communications are strained on both sides and that this factor favored neither party.

**6.    The domestic violence factor needs to be reconsidered on remand.**

The court then weighed the existence of "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents."[36]  The court "decline[d] to enter a finding that either party . . . engaged in a pattern of domestic violence."  However, as explained above, it is not apparent from the court's findings that it considered violations of the 20-day protective order, the factual basis for the long-term DVPO.  The court should have expressly considered these violations, found whether the evidence demonstrates "domestic violence . . . in the proposed custodial household or a history of violence

---

[35]    AS 25.24.150(c)(6).

[36]    AS 25.24.150(c)(7).

between the parents," and, if so, given the factor the appropriate weight in the best interests analysis.

### 7. The court did not err by finding that Cornell's substance abuse affected the child's well-being.

Finally, the court evaluated "evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child."[37]  The court found that Cornell had "an issue with alcohol" and that this factor favored Jasmine.  Jasmine agrees with this factual finding, but she argues that the court improperly struck a confidential report of Cornell's neuropsychological evaluation, which she had offered in evidence and which she contends will show the extent of his substance abuse disorder and psychological problems.

Jasmine submitted a copy of the confidential report with her response to Cornell's interim custody motion in March 2023.  Cornell moved to strike it under Alaska Civil Rule 12(f) on grounds that it contained "redundant, immaterial, impertinent, or scandalous material."  The court granted the motion without specifying the grounds on which it did so.  The transcript shows that regardless of this ruling Jasmine referred to the report several times during the May 2023 interim custody hearing.  But she does not direct us to any point when she attempted to have the report admitted at trial eight months later, nor does she identify any trial witness whose testimony could have overcome the report's apparent hearsay problems.[38]  Jasmine's

---

[37]  AS 25.24.150(c)(8).

[38]  *See* Alaska R. Evid. 801(c) ("Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

failure to offer the report into evidence at trial means that she has waived the issue on appeal.[39]

### C. The Court Did Not Abuse Its Discretion By Reserving Property Issues For Later Determination.

Jasmine also argues that the superior court erred by not dividing the parties' property in the divorce decree. She cites AS 25.24.450 in support of her argument that the court must "determine the parties' respective rights to and responsibilities for property and obligations not finally distributed and as to any property or debts accrued by either party while the order is in effect." But the court plainly did not abandon its responsibility to "determine the parties' respective [property] rights"; rather, it delayed that determination, deciding only those financial matters that directly impacted child custody.

A superior court overseeing a divorce case may reserve custody or property issues for later determination if the parties agree or if the party asking for the bifurcation "shows good cause and the court finds that the interests of a party opposing the motion will not be jeopardized by the delay or reservation."[40] Here it was Jasmine herself who, on the eve of the custody trial, moved to bifurcate the property issues for later determination, asserting that she had not received discovery from Cornell and was "unaware of Cornell's retirement account information."[41] At the start of the trial the court took up Jasmine's motion, asking the parties whether they were ready to proceed

---

[39]    *See Mueller v. Buscemi*, 230 P.3d 1153, 1155 (Alaska 2010) (explaining that "a party ordinarily 'waives its right to challenge the exclusion of evidence unless an offer of proof as to the substance of the evidence is made at the time the evidence is excluded' " (quoting *Agostinho v. Fairbanks Clinic P'ship*, 821 P.2d 714, 717 (Alaska 1991))).

[40]    AS 25.24.155(a)(2).

[41]    In our record this expedited motion is accompanied by a deficiency notice informing Jasmine that she needed to correct service information and file an underlying motion and proposed order. Jasmine filed a proposed order a few weeks later.

with the whole case. Jasmine said she had not received information about Cornell's current employment, where he had worked for two years; however, so that the parties would not have to "keep going back and forth," she said they could "just do everything today." The court responded somewhat ambiguously: "So, obviously, the main issue is . . . ultimately a final custody order." Most of the testimony that followed was focused on custody, but toward the end of the proceeding the court did have some back-and-forth with the parties about a few property issues, particularly a Jeep and a retirement account. In the divorce decree, issued about six weeks later, the court stated, "Property and debt will be determined at a later date by the Court if the parties are unable to resolve the property issues on their own."

"We review for abuse of discretion the superior court's decision to bifurcate the divorce proceeding."[42] In *Husseini v. Husseini* we held that it was an abuse of discretion to reserve issues of property allocation for some time after the grant of divorce "without a showing of good cause by the moving party and without a finding that the opposing party's interests would not be jeopardized."[43] But we further explained that such "error [is] harmless" where "the issue of the legal marriage" is resolved first and there is no evidence that "early dissolution [of marriage] . . . impact[s] the outstanding property issues."[44] In *Wilson v. Wilson* we reiterated that courts should not bifurcate divorce proceedings where doing so could prejudice unresolved property interests.[45] In that case, one party sought a divorce in Alaska while related custody and property proceedings were ongoing in Ohio.[46] Citing AS 25.24.155(a), we affirmed the

---

[42]     *Husseini v. Husseini*, 230 P.3d 682, 685 (Alaska 2010).

[43]     *Id.* at 686.

[44]     *Id.* at 686-87.

[45]     271 P.3d 1098, 1102 (Alaska 2012).

[46]     *Id.* at 1099.

court's decision to decline jurisdiction over the divorce proceedings on grounds that the date of divorce could later impact the "valuation and distribution of marital assets" in Ohio.[47]

The superior court in this case granted the decree of divorce and decided the custody issues, but postponed proceedings on marital property without an apparent assessment of good cause or findings about potential prejudice. There is no indication, however, that any of the outstanding property issues were implicated by the divorce decree and custody determination, and Jasmine does not argue that they were. If it was error for the court to postpone proceedings on the property issues without making the appropriate findings, the error was harmless.

**D.    The Court Did Not Err By Not Changing The Child's Last Name.**

Finally, Jasmine asks that the child's last name be changed to a combination of Cornell's last name and her previous one. She concedes that she did not make this request at trial but only in her response to Cornell's later motion for reconsideration of the custody award. We note that AS 09.55.010 and Alaska Civil Rule 84(e) describe the process for petitioning to change a child's name.[48] It is only after the superior court hears any objections and makes findings about the child's best interests that there would be a name-change decision for us to review on appeal.

## IV.    CONCLUSION

The superior court's custody award is VACATED and REMANDED for further proceedings consistent with this opinion.

---

[47]    *Id.* at 1102.

[48]    *See In re a Change of Name for A.C.S.*, 171 P.3d 1148, 1150 (Alaska 2007).